PPG INDUSTRIES, INC., Appellant,

v.

CONTINENTAL OIL COMPANY, Appellee.

No. 16016.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Feb. 15, 1973.

Rehearing Denied March 15, 1973.

Raymond A. Cook, Alfred H. Ebert, Jr., Houston, for appellant; Andrews, Kurth, Campbell & Jones, Houston, Stockwell, St. Dizier, Sievert & Viccellio; Oliver P. Stockwell, Fred H. Sievert, Jr., Lake Charles, La., David A. Cort, Richard C. Packard, Pittsburgh, Pa., of counsel.

Vinson, Elkins, Searls, Connally & Smith, John C. Snodgrass, F. Russell Kendall, Harry M. Reasoner, John E. Kennedy, Houston, for appellee; Liskow & Lewis, Austin W. Lewis, Gene W. Lafitte, James B. St. John, Jr., New Orleans, La., Keith W. Blinn, Stamford, Conn., John M. Berlinger, Joseph C. Johnson, Houston, Van E. Langley, Stamford, Conn., of counsel.

COLEMAN, Justice.

This is an appeal from an order granting a temporary injunction enjoining PPG Industries, Inc., its employees, agents, and attorneys from continuing to prosecute the suit styled PPG Industries, Inc. v. Continental Oil Company, in the 14th Judicial District Court, Parish of Calcasieu, State of Louisiana. The Louisiana suit was subsequently filed, and raised substantially the same issues as does this case.

This suit was filed on May 10, 1972, by appellee, hereinafter referred to as Continental, against appellant, hereinafter referred to as PPG, and Olin Corporation, hereinafter referred to as Olin. Olin is not a party to this appeal.

Continental contracted to supply a substantial portion of PPG's natural gas requirements at its chemical plant located near Lake Charles, La. Continental also supplies Olin and other natural gas users, including a facility which it owns. In 1969 Continental determined that it would have difficulty in meeting the delivery requirements of its contracts with PPG and Olin. Continental alleges that it is impossible or commercially impracticable for it to deliver the gas required because of the catastrophic impact of the national energy crisis, with related changes in governmental regulation and market conditions. After two years of negotiations failed to resolve the problem, this suit was filed in the District Court of Harris County, Texas. By this suit it seeks a declaration of its contractual obligations and an equitable decree allocating its available supplies of natural gas.

Continental is a corporation organized under the laws of the State of Delaware with a permit to do business in Texas. It maintains a regional office in the City of Houston, Texas, and its Louisiana operations are generally supervised from this office. PPG is a Pennsylvania corporation. It has a permit to do business in Texas and has plants and offices in Harris County. Olin is a Virginia corporation. It also has a permit to do business in Texas and has plants and offices in Harris County. Service was perfected on May 24, 1972, and the District Court of Harris County acquired in personam jurisdiction of the parties.

In April, 1972, arrangements were made between officials of Continental and PPG to discuss the gas contract in Pittsburgh on May 22, 1972. Prior to that date this suit was filed. On May 31, 1972, PPG filed its

suit in the Louisiana State Court. On June 27, 1972, a temporary restraining order was issued by the Harris County District Court without notice restraining the prosecution of the Louisiana State Court suit for the reason that there was a probability that PPG would seek in that court to restrain the prosecution of the suit in Harris County. A hearing on a temporary injunction was set for June 28, 1972. A hearing on the temporary injunction began on June 29, 1972. On that date PPG also filed a suit against Continental on the same cause of action in the United States District Court in Lake Charles, La. On July 14, 1972, the order from which this appeal was taken was signed and entered. The reason for its issuance as stated by the court in the order was that the Harris County suit was filed first, the controversy was identical to that in the Louisiana State Court, and that the prosecution of the latter suit would interfere with the exclusive jurisdiction of the Harris County Court.

On July 20, 1972, Olin filed suit against Continental in a state court in Louisiana and enjoined Continental from seeking a Texas injunction to stop its prosecution. Thereafter the Calcasieu District Court stayed proceedings in PPG's suit until the Harris County case was disposed of, and the Federal District Court also stayed proceedings, although permitting an appeal from its stay order.

Appellant complains that the granting of this injunction was an abuse of discretion and asserts the following reasons:

"A. The only justifiable ground for a Texas court to enjoin a Louisiana lawsuit is the protection of its own citizens or property, neither of which is involved here.

"B. Under the undisputed evidence this is a Louisiana controversy between two foreign corporations and should be litigated in Louisiana.

"C. In equity there is no priority in Conoco's lawsuit, filed while PPG was waiting to negotiate in deference to Conoco's own invitation."

■ There can be no doubt that the District Court of Harris County had the power, in a proper case, to restrain persons in its jurisdiction from prosecuting suits in other states. Moton v. Hull, 77 Tex. 80, 13 S.W. 849 (1890). In the cited case the court stated the rule to be "that, if the averments of the petition for injunction are of such a character as to make it the duty of the court to restrain or enjoin the party from instituting or conducting like proceedings in a court of this state, it would be a proper case for restraining him by a similiar process from prosecuting such suit in the courts of another state."

■ It is clearly the law in Texas that when a suit is filed in a court of competent jurisdiction and all the necessary parties are before it, it is entitled to proceed to judgment and may protect its jurisdiction by enjoining the prosecution of a suit subsequently filed involving the same controversy. Cleveland v. Ward, 116 Tex. 1, 285 S.W. 1063 (1926); V. D. Anderson Co. v. Young, 128 Tex. 631, 101 S.W.2d 798 (1937).

The question presented by this appeal is whether the trial court abused its discretion in granting the temporary injunction.

■ A foreign corporation doing business in a state after complying with statutory conditions permitting it to do so is treated as a resident of the state within the principles involved in suits for injunctions against proceedings in other states. Anno. —Injunction—Action in Another State, 6 A.L.R.2d 901. The author of this annotation states as a rule:

"There is a third class of cases, in which the gravamen of the prayer for injunction is not some duty owed by one resident toward another of the same state, but the duty of the court itself to protect its jurisdiction over a controversy in order to decree complete and final

justice between all parties interested in the subject of it, or rightly to be concluded by the disposition made, and in which to do so it may grant an injunction. This class of cases comprises . . . (b) cases in which a court of equity, or one in which equitable issues may be raised, has taken prior jurisdiction of a cause by reason of the residence of one or more of the parties, and may protect its purpose to make complete disposition of the controversy. . . ."

■ It is said that the power to enjoin the prosecution of a suit in a foreign jurisdiction should be exercised sparingly, and not unless a clear equity is presented requiring the interposition of the court to prevent manifest wrong and injustice. 43 C.J.S. Injunctions § 49, p. 499.

■ A ground for such an injunction exists when such relief is necessary to prevent a multiplicity of suits. University of Texas et al. v. Morris, 344 S.W.2d 426 (Tex.1961).

■ The question arises as to whether the trial court abused its discretion in granting the injunction for the reason that the matter could be more appropriately tried in the Louisiana court. If under the doctrine of forum non conveniens a serious question arises as to whether the Texas court should retain jurisdiction of the case, it would amount to an abuse of discretion to continue in force an injunction prohibiting trial in a convenient foreign jurisdiction. The factors to be considered in applying the doctrine are quoted in Flaiz v. Moore, 359 S.W.2d 872 (Tex.1962). Some of the factors mentioned are (1) the private interest of the litigant; (2) ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (4) the ability to give effective relief; (5) whether foreign law must be applied to the facts of the case, and, if so, whether it is so dissim-

ilar to the laws of this state as to be difficult or incapable of enforcement here.

Particularly pertinent to this case is the following quotation from the opinion of Mr. Justice Jackson in Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L. Ed. 1055:

"Factors of public interest also have place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

While the question of forum non conveniens was not presented to the trial court by pleading, the Louisiana "flavor" of the case was presented to the trial court. The contract provides that all gas furnished by Continental must be used by PPG in its Lake Charles facilities and may not be allowed to enter interstate commerce. The gas being furnished under the contract is totally produced from lands in Louisiana. The pipelines delivering the gas from the gas fields in Louisiana to PPG are all in that state. The other customers to whom Conoco delivers gas are located in Louisiana. There is a question as to whether the Texas Court should apply Texas law or Louisiana law. It is probable that many witnesses will be residents of Louisiana, and that much of the record evidence to be used at the trial is located in Louisiana. It

was urged that if the court should determine that the available supply of natural gas should be allocated, difficulty would arise in formulating a proper order, which might affect other customers resident in Louisiana, and in supervising its execution over a period of years.

On the other hand the parties to the Texas suit are "residents" of Texas; the principal controversy relates to the enforcement of a written contract; the plaintiff maintains a regional office in Houston, where many of its records relating to the contract and its performance are kept; it is probable that witnesses from the Houston office will be needed; the Texas suit was first filed; and it may develop that Texas law is applicable.

The facts with reference to forum non conveniens were not fully developed. Such a plea may yet be presented and a motion to dissolve the injunction urged.

■ The proposition that a Louisiana court is the proper forum for the trial of a Louisiana lawsuit is an appealing one. However the forum chosen by the plaintiff is not so inconvenient as to "vex, harass, or oppress" the defendant, and it is said that unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. Gulf Oil Co. v. Gilbert, supra.

■ It has also been said that the power to enjoin proceedings already pending in a foreign jurisdiction should be exercised only by reason of very special circumstances.

". . . I speak not of any limitation upon the power of this court, but on the propriety of its exercise in the particular case. Its exercise is not to be properly based upon any theory that this court knows better how to do justice than the court of last resort of the commonwealth; that it can weigh evidence better, or more justly apply to the facts any general principle of law or of equity; nor upon the ground that this court recognizes different rules of law or of equity from those which obtain in the commonwealth. A condition precedent to an application to this court for relief in all ordinary cases is the absence of a full, adequate, and complete remedy elsewhere. And besides, there is the general rule, essential to the orderly administration of justice, that, as between courts otherwise equally entitled to entertain jurisdiction, that court which first obtains possession of the controversy ought to be allowed to proceed and dispose of it without interference; a rule established, of course, primarily for the benefit of the suitor, rather than for the protection of the dignity of the court . . ." Bigelow v. Old Dominion Copper Mining & Smelting Co., 74 N.J. Eq. 457, 71 A. 153 (Court of Chancery of New Jersey, 1908).

■ While appellee filed this suit prior to the date of the conference to which it had invited appellant for the purpose of attempting to resolve their differences, it is not established that this invitation had the effect of preventing the filing of a prior suit by appellant in Louisiana. This action was not such fraud or overreaching as to establish that appellee came into court seeking equity with unclean hands.

The decision of the trial court to protect its jurisdiction over the controversy by issuing a temporary writ of injunction did not constitute a clear abuse of discretion.

The judgment is affirmed.