**Fred G. GANNON, Appellant,**

v.

**Robert B. PAYNE, Appellee.**

**No. 05–84–00826–CV.**

Court of Appeals of Texas, Dallas,

July 24, 1985.

Rehearing Denied Aug. 27, 1985.

Gerard B. Rickey, Dallas, for appellant.

Erich F. Klein, Jr., Ron Edmondson, Lyne & Klein, Dallas, for appellee.

Before AKIN, STEPHENS and GUILLOT, JJ.

STEPHENS, Justice.

This is an appeal from an interlocutory order in which the trial court entered a temporary injunction prohibiting Fred G. Gannon from prosecuting a lawsuit he filed against Robert B. Payne in Alberta, Canada. In our prior opinion, we held that the trial court abused its discretion, and we ordered that the temporary injunction be dissolved. After review and consideration of appellee's motion for rehearing, we conclude that our prior opinion was in error. Consequently, appellee's motion for rehearing is granted. Our prior opinion dissolving the trial court's temporary injunction is withdrawn, and this opinion, reinstating the trial court's temporary injunction, is substituted.

This extensive litigation [1] stems from an agreement entered into between Robert B. Payne and Fred G. Gannon in 1965. Gannon and a firm called Paddon-Hughes acquired an oil and gas lease in Canada. Gannon owned 50% of the lease and Paddon-Hughes owned the other 50%. The contract between Gannon and Paddon-Hughes provided for a right of first refusal in favor of Paddon-Hughes, should Gannon decide to sell his interest. Unknown to Paddon-Hughes, Gannon committed 30% of his 50% interest (or 15% of the total leasehold interest) to John Carstairs and Michael Voelker, and had contracted with Payne to share equally with him in the costs and profits. Payne was aware of the interest committed to Carstairs and Voelker and that the percentage he was to receive equalled one-half of whatever interest Gannon retained in the lease.

Between June 1970 and December 1971, Gannon honored the agreement by paying 35% of the profits he received to Payne, retaining 35% for himself, and remitting 30% to Carstairs and Voelker. After that period of time, during which the venture became very profitable, Gannon unilaterally reduced the percentage of payment to Payne from 35% to 30%, claiming that he was entitled to do so because he had done the work while Payne had received a "free ride."

Payne disagreed with this reduction and instituted suit in Canada, claiming that he was entitled to 17.5% of the lease and that Gannon was holding this interest in trust for him.[2] On September 20, 1979, the Canadian trial court rendered judgment that Payne was entitled to the 17.5% interest in

---

1. The record consists of four volumes of transcript, six volumes of records of proceedings in Canadian courts, statements of facts, exhibits, briefs and reply briefs—coupled with a motion for rehearing, accompanied by briefs and reply briefs.

2. The 17.5% reflects 50% of Gannon's interest in the lease, taking account of the 15% committed to Carstairs and Voelker.

the lease and the court ordered Gannon to transfer and convey that interest to Payne, together with all other property, rights, titles and interests he had acquired under his agreement with Paddon-Hughes. The judgment further ordered Gannon to account for any unpaid sums due Payne, together with interest.

Gannon, dissatisfied with this judgment, appealed to the Court of Appeal of Alberta, which on October 23, 1980, dismissed the appeal in Payne's favor. Gannon next applied to the Supreme Court of Canada for leave to appeal the judgment of the Court of Appeal. The application was denied by the Supreme Court of Canada on October 23, 1980, and the Canadian litigation was thus concluded.

On August 30, 1982, long after the conclusion of the Canadian litigation, Payne filed suit against Gannon in the 160th Judicial District Court of Dallas, Dallas County, Texas. Gannon filed an answer and, by doing so, submitted himself to the jurisdiction of the Texas court. In addition, Gannon filed a counterclaim, which was later nonsuited, in which he affirmatively invoked the jurisdiction of the Texas court. Since the filing of the suit, numerous preliminary matters have been presented to the trial court and disposed of.

On April 30, 1984, Payne filed his Third Amended Original Petition. By this petition, Payne seeks recovery from Gannon for fraudulent representations which induced him to originally enter into the Canadian oil lease; for concealing and misrepresenting the income received from the lease, both before and after the Canadian litigation; for an accounting of all expenses and income of the lease; for reimbursement of monies paid Gannon by Payne for legal fees charged for services rendered by Gannon, who the record does not show to be a licensed attorney in Canada; for repayment of damages incurred by Payne, which were occasioned by a fraudulent defense asserted in the Canadian suit; for specific performance by way of conveyance of an additional percentage of the Canadian lease, arising because of certain conveyances made by Gannon after the termination of the Canadian litigation, which directly affected Payne's interest in the lease; seeking a declaration that a conveyance by Gannon of Gannon's interest in the lease to a Canadian corporation is a sham because the corporation is the alter ego of Gannon; for exemplary damages; and for alternative relief on several counts.

Payne additionally filed a application for a temporary injunction prohibiting Gannon from prosecuting a suit he filed in Canada, in which he sought a declaratory judgment which would interfere with the Texas court's jurisdiction. Gannon answered this application for temporary injunction, on the grounds that the Canadian litigation was res judicata of all of Payne's claims in the Texas suit; that a plea in abatement in the Canadian suit is a proper and mandatory remedy; that Payne has neither pleaded why he has no other adequate remedy at law nor why he will suffer immediate irreparable harm; that the power of enjoining a party from proceeding in a foreign court should be sparingly exercised; that litigation in the Canadian court will dispense with a multiplicity of suits; that the corporation to which Gannon conveyed his interest in the lease is an indispensable party to this suit, and that it is a Canadian corporation and does no business in Texas; that an order of the Texas court would not be recognized by the Canadian court; that Payne's suit seeks to determine title to Canadian property, over which it has no jurisdiction; that the rule of forum non conveniens is applicable and should govern; and that litigation in Texas would be considerably more expensive than litigation in Canada. After a hearing, the trial court issued its temporary injunction. (See appendix.)

On an appeal from the entry of the temporary injunction, the sole question for determination by this court is whether the trial court abused its discretion by issuing the temporary injunction. *Iranian Muslim Organization v. City of San Antonio*, 615 S.W.2d 202, 208 (Tex.1981); *Houston Independent School District v.*

*City of Houston,* 443 S.W.2d 49, 50 (Tex. 1969). It is undisputed that the 160th Judicial Court of Dallas County has jurisdiction over the parties to this suit. It is further undisputed that after the Texas court had acquired jurisdiction of the parties, and had exercised that jurisdiction for a period of almost two years, Gannon filed suit in Canada, seeking to litigate claims which were before the Texas court and seeking to interfere with the jurisdiction of the Texas court. It has long been Texas law that when suit is filed in a court having jurisdiction of the parties and the subject matter, that court may proceed to judgment and may protect its jurisdiction by enjoining the parties from prosecution of another suit subsequently filed in another court, involving the same subject matter. *Cleveland v. Ward,* 116 Tex. 1, 285 S.W. 1063 (1926); *V.D. Anderson Co. v. Young,* 128 Tex. 631, 101 S.W.2d 798 (1937); *PPG Industries, Inc. v. Continental Oil Co.,* 492 S.W.2d 297 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.).

 As to the question of res judicata raised by Gannon, the law is equally clear that a trial court is not authorized to determine the merits of a plea in bar in a hearing on an application for temporary injunction. *Houston Belt & Terminal Ry. Co. v. Texas & New Orleans Ry. Co.,* 155 Tex. 407, 289 S.W.2d 217 (1956); *DeVilbiss v. West,* 600 S.W.2d 767 (1980). The only question before the trial court in a hearing on a temporary injunction is whether the movant is entitled to preservation of the status quo of the subject matter of the suit pending a trial on the merits. *Davis v. Huey,* 571 S.W.2d 859 (Tex.1978).

Next, Gannon raises the questions of forum non conveniens and comity, arguing essentially the same matters that were argued in *New Process Steel v. Steel Corp. of Texas,* 638 S.W.2d 522 (Tex.Civ.App.— Houston [1st Dist.] 1982, no writ). In that case, the appellant argued the question of multiplicity of suits, the doctrine of comity, irreparable harm resulting from the expense of litigation, and the doctrine of forum non conveniens. The trial court denied a temporary injunction sought to enjoin one of the parties from proceeding in a subsequent suit in Oklahoma. The appellate court affirmed, pointing out that trial courts have broad discretion in granting or denying temporary injunctions and that the appellate court cannot substitute its discretion for that of the trial court. *New Process Steel,* 638 S.W.2d at 524. Moreover, the court noted that the sole function of the appellate court is to determine whether there has been a clear abuse of discretion by the trial court. *New Process Steel,* 638 S.W.2d at 524.

 In response to Gannon's argument concerning comity, we note that comity is not a rule of law but a principle of convenience, to be administered not as a matter of obligation, but only out of deference and respect, and then not as a matter of right, but as a courtesy if, in its discretion, the trial court so chooses. *New Process Steel,* 638 S.W.2d at 524. We conclude that the trial court's failure to apply the doctrine of comity under the facts of this case does not demonstrate an abuse of discretion.

 With respect to the doctrine of forum non conveniens, we conclude that the facts are not so heavily weighted toward either court as to reflect an abuse of discretion. *New Process Steel,* 638 S.W.2d at 525. In our case, the Texas court had in personam jurisdiction and, contrary to the Gannon's argument, readily admits that it has no jurisdiction to determine title to real property in Canada.

 Finally, after considering Gannon's argument of the expense of litigation in Texas, we hold that the record does not reflect such a degree of expense and hardship as to warrant a finding of abuse of discretion by the trial court. To the contrary, we note that the extensive litigation in this suit, participated in between the parties, prior to the instigation of the Canadian action have already resulted in untold expense to the parties that would be fruitless if now discontinued.

Our search of the record fails to disclose an abuse of discretion exercised by the trial court. Consequently, we conclude that the issuance of our original opinion was in error. We now withdraw our original opinion and reinstate the temporary injunction of the trial court.

AKIN, J., dissenting.

## APPENDIX

## TEMPORARY INJUNCTION

### ORDER

On the 29th day of June, 1984, came on to be heard the Application for Writ of Injunction filed herein by the Plaintiff, and came also to be heard Defendant's Motion For Continuance and Defendant's Amended Motion For Stay; and after receiving evidence and hearing argument of counsel, the Court is of the opinion that the Application should be granted and the Court makes the following findings and orders:

The Court finds:

(a) Defendant's Motion For Continuance was no longer urged after Plaintiff agreed to waive, for the purpose of this hearing only, the requirement of thirty (30) day notice of the content of certain Canadian law upon which Defendant proposed to rely.

(b) The Application has been properly filed herein and, pursuant to order of the Court, due and proper notice has been given to the Defendant.

(c) The Special Exceptions of Defendant contained in his Amended Response to Application for Injunction should be, and they are hereby, overruled.

(d) This case was filed by the Plaintiff against the Defendant on August 30, 1982. Personal service was duly perfected in Dallas, Texas on the Defendant. The Defendant appeared and filed his Original Answer on September 2, 1982, followed by the filing of a Counterclaim against the Plaintiff on October 8, 1982. Subsequently, Defendant has appeared and taken many affirmative actions in this cause including: a Re-quest for Production of Documents filed on October 18, 1982, filing Interrogatories on January 12, 1983, agreeing to an Order respecting Special Exceptions on January 17, 1983, filing Interrogatories on January 24, 1983, filing an amended Counterclaim on January 31, 1983, moving for sanctions on February 16, 1983, filing a Motion for Summary Judgment and Affidavit in connection therewith on March 8, 1983, filing an Amended Answer on April 25, 1983, changing his trial counsel in May of 1983, moving for modification of the Agreed Order in May of 1983, filing a Motion and Order for Non-Suit on his Counterclaim, filing Special Exceptions to Plaintiff's Petition, filing a Plea in Abatement on June 9, 1983, filing a Second Amended Answer on June 9, 1983, filing a Third Amended Answer on June 13, 1983, filing a Notice to take the Deposition of Plaintiff on June 22, 1983 and actually taking such deposition, filing a Motion for Protective Order on June 24, 1983, filing a Brief in Support of his Motion for Protective Order, filing a Request for Admissions on July 12, 1983, filing a Plea in Abatement on August 22, 1983, substituting counsel on December 9, 1983, filing a Fourth Amended Original Answer on December 27, 1983, filing a Motion to Dismiss on December 27, 1983, filing an Affidavit in Support of the Motion to Dismiss on December 27, 1983, filing a Third Plea in Abatement on December 27, 1983, filing an Affidavit in Support of the Third Plea in Abatement on December 27, 1983, filing a Third Motion for Summary Judgment on December 27, 1983, filing an Affidavit in Support of such Motion for Summary Judgment, filing a Motion to Determine the Laws of a Foreign Country on January 6, 1984, filing Notice of Intention to Take Depositions of Milvain, Crawford, Evans and Robert B. Payne, filing a Motion to Dismiss Federal Security Allegations, filing a Motion to Dismiss Mail Fraud Allegations, filing a Supplemental Answer on Jaunary 17, 1984, filing a Request for Admission on January 18, 1984, and agreeing to various Orders heretofore issued and taking other steps to take issue with the Plaintiff on the merits of this cause.

(e) Notwithstanding the fact that this cause has been pending since August of 1982 and is now specially set as the number one case for trial on the merits on October 8, 1984, Defendant, on June 8, 1984, has caused to be filed in the Court of Queen's Bench of Alberta, Judicial District of Calgary, Canada, a certain cause of action entitled *"Fred G. Gannon, et al. vs. Robert B. Payne, et al."* Such cause of action is herein called the "Canadian Action." A copy of the Statement of Claim therein is a part of the record of this cause.

(f) After first requesting the same, the Defendant has recently requested the discontinuance of the second deposition of Plaintiff Robert B. Payne. Such deposition was scheduled by attorneys for both Plaintiff and Defendant for June 21, 1984.

(g) The primary purpose of the Canadian Action is to litigate the issues which have already been placed in issue before this Court by Fred G. Gannon and by Plaintiff, and to otherwise interfere with the processes and jurisdiction of this Court.

(h) Plaintiff was handed a copy of the Statement of Claim and a document entitled "Order for Service Ex Juris" by a person who is an attorney who shares an office with Defendant's attorney, Gerald Rickey.

(i) The contracts and agreements upon which many of the issues herein rest were negotiated between the Plaintiff and the Defendant by one of two methods: (i) by telephone calls and correspondence between the parties while Defendant was in Canada and Plaintiff was in Dallas, Texas, and (ii) by personal conversations between the parties occurring in Dallas, Texas. The primary breach of these contracts and agreements occurred during a conversation during a meeting of Plaintiff and Defendant held in Dallas, Texas.

(j) Plaintiff has incurred at least $24,000.00 in prosecuting this cause of action. Defendant has also incurred costs herein. Defendant or Plaintiff will be responsible for court costs herein. If Defendant is not enjoined as prayed for by Plaintiff, (i) the sums previously spent by Plaintiff and Defendant herein will have been wasted; (ii) no real offsetting recoupment of litigation costs will be obtained by either party in the Canadian litigation but, instead, additional costs will be incurred; (iii) the court costs herein may not be paid should they be assessed against Defendant Gannon; and (iv) multiplicity of suits will result.

(k) The Court has proper jurisdiction over the person of the Defendant, Fred G. Gannon. The acts of Defendant sought to be restrained by Plaintiff are as set out below. Unless Defendant is so restrained, Plaintiff will suffer irreparable injury in that Plaintiff has no adequate remedy at law, valuable time will be lost by Plaintiff, Plaintiff's costs of conducting this proceeding will have been lost, Plaintiff will be forced to travel to Canada to try issues that are properly before this Court; and Defendant's actions will cause the Court to lose jurisdiction of this cause.

(*l*) The action of the Defendant threaten to alter the status quo of the parties; and the granting hereof will maintain the status quo.

(m) Unless the Court grants the injunction sought by Plaintiff, there is the risk of inconsistent judgments rendered by a Court in Texas, and by a Court in Canada, with no means of resolving the conflict. Therefore, Plaintiff is without an adequate remedy at law; and, in light of the expenses already incurred, even if Plaintiff can seek to abate or stay the suit in Canada, such a remedy is inadequate.

IT IS THEREFORE ORDERED that the Special Exceptions contained in the Response to Application For Injunction should be, and they are hereby, overruled; and

IT IS FURTHER ORDERED that the Defendant, Fred G. Gannon, his agents, servants, employees and attorneys and those persons in active concert or participation with him who receive actual notice of the Writ of Injunction by personal service or otherwise, be, and they are hereby, commanded forthwith to desist and refrain from: (1) taking any action whatsoever in that cause of action styled "Fred G. Gan-

non, et al. vs. Robert B. Payne, et al." in the Court of Queen's Bench of Alberta, Canada, Calgary Judicial District, save and except to dismiss the same, if Defendant so chooses; (2) assisting in the prosecution of the same by any means including but not limited to filing any pleadings, requesting any action of such Court, making any appearance therein or continuing the prosecution of such cause of action, counselling or encouraging others to continue the prosecution thereof, and (3) commencing any other court action which seeks to interfere with the jurisdiction of this Court or attempts to deal with any issues raised in this cause; such restraint upon Defendant shall continue in full force and effect pending final hearing and determination of this cause.

The Clerk shall forthwith, on the filing by Plaintiff of the bond hereinafter required, and on approving the same according to law, issue a writ of injunction in conformity with the law and the terms of this Order.

Service of such writ of injunction on the Defendant Fred G. Gannon may be had by service upon Defendant's counsel of record herein, including Gerald B. Rickey.

This Order shall not be effective until Plaintiff executes and files with the Clerk a bond, in conformity with the law, in the amount of Five Thousand and NO/100 ($5,000.00) Dollars.

AKIN, Justice, dissenting.

I cannot agree that the entry of the temporary injunction was not an abuse of discretion. Although the majority has chosen not to address the primary question of whether Payne established a probable right of recovery, I would hold that he did not. Indeed, Payne neither pleaded nor proved that he had no adequate remedy at law nor why he would suffer irreparable harm. Additionally, I would hold that the trial court abused its discretion because under the doctrines of *forum non conveniens* and of comity the Texas court should defer to the Canadian courts for a resolution of this dispute instead of enjoining Gannon from proceeding in the Canadian court. Additionally, I would dissolve the injunction because it fails to comply with TEX.R. CIV.P. 683. Accordingly, I must dissent.

The majority apparently rests its affirmance of the temporary injunction on the ground that the trial court had jurisdiction of the parties and that Gannon's Canadian suit would interfere with the Texas court's disposition of this litigation. A secondary ground, which is recited as a reason in the trial court's order, is that Payne has expended more than $24,000 in litigation expenses in Texas. These grounds, in my view, are insufficient to justify the injunction imposed on Gannon. Indeed, if grounds did exist for imposition of an injunction, equity would require that both Gannon and Payne be enjoined from pursuing the Canadian litigation. If permitted to stand, the trial court's injunction places Gannon in an untenable situation if Payne chooses to also proceed against him in the Canadian court.

For a complete understanding of the present appeal, it is necessary to review all of the facts preceding Payne's current suit, including the prior Canadian litigation concerning this same Canadian mineral lease between these parties.

In December 1964, Gannon and Payne first discussed acquiring a lease on the mineral interest to a tract of land located in Canada. Both agreed to equally share the acquisition and development costs associated with this prospective leasehold interest. Pursuant to their agreement, Gannon contacted Paddon Hughes Development Company, Ltd., concerning his and Payne's desire to obtain an interest in a lease of this property's mineral rights. However, for reasons not revealed in the record, Paddon Hughes would deal only with Gannon. Consequently, Payne agreed that Gannon would hold in trust his half-interest in any mineral interest they might acquire in order to facilitate Gannon's negotiations with Paddon Hughes.

On April 23, 1965, Paddon Hughes agreed that if it was successful in obtain-

ing the mineral lease to this property, it would convey one-half of its interest to Gannon. The agreement also provided that Paddon Hughes' interest would be subject to the carried interest owner's fifteen percent interest in the mineral lease, and further stipulated that Gannon could not dispose of any portion of the interest received under the agreement without first offering it to Paddon Hughes.

Later that year, Hambly, the property owner, granted Paddon Hughes an option to acquire a petroleum and natural gas lease on his land. However, Hambly had already conveyed a similar lease to another lessee. As a part of its arrangement with Hambly, Paddon Hughes agreed to institute legal proceedings to declare that the previous lease had expired. Under Gannon's agreement with Paddon Hughes, Gannon and Payne each contributed $10,000 for their interest in the option and would pay $10,000 each when the lease was obtained.

Litigation to terminate the previous lease commenced. In a December 11, 1967, letter, Gannon requested that Payne compensate him for the legal services which Gannon had rendered in connection with this litigation. Payne responded that he did not think their agreement to share equally the costs of acquiring the Hambly lands and bringing them into production included reimbursing Gannon for his legal work; however, he did agree to pay one-fourth of Gannon's fee.

In May 1970, Paddon Hughes successfully concluded its litigation to declare the previous lease void and, exercising its option, acquired the Hambly property's mineral rights to any underlying petroleum or natural gas. Through Gannon, Gannon and Payne each paid $10,000 for their combined thirty-five percent interest in the Hambly lease. Paddon Hughes brought the lease into production and from June 1970 through December 1971 Gannon distributed to Payne his 17½ percent share of the proceeds.

Gannon then traveled to Dallas and informed Payne that he was reducing Payne's interest to fifteen percent because Payne had enjoyed a "free ride" while Gannon had been actively working on the project. Payne refused to agree; nevertheless, Gannon unilaterally reduced Payne's interest without Payne's knowledge that he was doing so. Between January and May, 1972, Payne received only fifteen percent of the proceeds from the production on the Hambly property. When Payne discovered the reduction, Payne confronted Gannon and Gannon refused to make further payments to Payne. Gannon also reduced and ultimately discontinued payments to Carstairs and Voelcker, the carried interest owners. Consequently, Payne and the carried interest owners sued Gannon in two independent actions in Canadian courts to recover their interests in the Hambly lease.

Gannon settled the Carstairs and Voelcker action in 1979. In addition to his action to compel Gannon to convey legal title to his 17½ percent interest in the Hambly lease, Payne also sought to recover one-half of the interest Gannon received from the Carstairs and Voelcker settlement. In defense to Payne's action to force Gannon to convey legal title, Gannon asserted that any conveyance would be subject to Paddon Hughes' first refusal rights. Instead of litigating the validity of this claim, Payne offered to convey to Paddon Hughes a two percent interest in the Hambly lease when he recovered from Gannon if Paddon Hughes waived its first refusal rights. Paddon Hughes accepted this offer and later Payne conveyed two percent of his interest to Paddon Hughes. The validity of Paddon Hughes' right of first refusal as well as Payne's agreement were before the Canadian court by Payne's trial amendment in that suit.

At the conclusion of the Canadian litigation, Payne recovered his share of the proceeds which Gannon had withheld. The Canadian court also ordered Gannon to convey legal title to Payne's 17½ percent equitable interest in all rights Gannon received under his agreements with Paddon Hughes. However, the Canadian court expressly denied Payne's claim to one-half of

the interest Gannon acquired through his settlement with Carstairs and Voelcker, and Payne's claim that Gannon reimburse him for the two percent interest he granted to Paddon Hughes in exchange for its waiving its first refusal rights. The court reasoned that this proviso in the Gannon-Paddon Hughes agreement did not preclude Gannon from having partners when he executed the agreement. Because Payne did not further appeal this judgment, it became final.

Payne has now filed suit in Texas seeking in part to recover half of the interest Gannon received from the Carstairs and Voelcker settlement, the two percent interest Payne transferred to Paddon Hughes for its waiving the right of first refusal, and reimbursement for the amounts paid for Gannon's legal work in clearing title to the Hambly mineral lease. In response, Gannon and Denton Energy, Ltd., filed a declaratory judgment action in the Canadian court seeking to enforce that court's earlier judgment. In addition to Payne, Gannon and Denton Energy also named Paddon Hughes and the successors in interest to Carstairs and Voelcker as defendants. The Texas court below then temporarily enjoined Gannon from proceeding with his suit in Canada.

In an appeal from a temporary injunction, the merits of the underlying cause of action are not presented for our review. *DeVilbiss v. West,* 600 S.W.2d 767, 768 (Tex.1980). Instead, our review is limited to a determination of whether there has been a clear abuse of discretion by the trial court in granting or denying the interlocutory injunction. *Davis v. Huey,* 571 S.W.2d 859, 861 (Tex.1978). The purpose of a temporary injunction is to preserve the status quo of the subject matter of the suit pending final trial on the merits. *Camp v. Shannon,* 162 Tex. 515, 348 S.W.2d 517, 519 (1961). Thus, a trial judge has broad discretion to temporarily enjoin when the pleadings and the evidence show that the applicant has a probable right of recovery and that he will probably suffer an irreparable injury if the injunction is not granted; however, the trial court abuses that discretion when granting injective relief pending trial if the evidence fails to furnish some reasonable basis for concluding that the applicant will probably prevail on the merits of his action. *Camp,* 348 S.W.2d at 519.

With respect to whether Payne has established a probable right of recovery in this suit, I conclude that he has not shown a probable right of recovery. In this respect, Payne is seeking in this action to recover from Gannon one-half of the interest Payne had previously transferred to Paddon Hughes prior to the conclusion of the earlier Canadian litigation, as well as one-half of the interest Gannon received from Carstairs and Voelcker as a result of their settlement of another prior Canadian suit. Because the Canadian courts had previously ruled on these claims adversely to Payne, I would hold that Payne has failed to establish a probable right of recovery in this action.

With respect to the evidence adduced at the hearing on the application for a temporary injunction, Payne introduced the entire record from the previous Canadian litigation, the contract between Payne and Paddon Hughes dated March 24, 1977, whereby Payne contracted to assign to Paddon Hughes 2% of his total 17½% of the Hambly lease for which Paddon Hughes waived its right of first refusal in its 1964 contract with Gannon, the statement of claim asserted by Gannon and Denton Energy in the Canadian court against Payne, Webb Patroleum, and other Canadian corporations, and the assignment of Payne's interest in the Hambly lease to Webb Petroleum as well as a reassignment dated June 1, 1984, from Webb Petroleum back to Payne of any cause of action or claim which Payne may have against Gannon.

Apart from these exhibits, Payne testified briefly concerning the entire transaction that was the subject matter of the prior Canadian litigation. Payne also testified that, after consultation with his Canadian attorney, his attorneys negotiated the contract with Paddon Hughes, for which

Payne now sues in Texas claiming that the right of first refusal in the 1964 Gannon-Paddon Hughes contract was fraudulently asserted thus causing Payne to enter into the above-mentioned contract with Paddon Hughes whereby Paddon Hughes waived its right of first refusal with respect to Payne only in exchange for 2% of Payne's 17½% per cent of the Hambly lease. Payne also testified that he sued in Texas to recover from Gannon the 2% which he transferred to Paddon Hughes and "for other reasons." The above is the *entire* evidence upon which the trial judge granted the temporary injunction. This evidence shows neither a probable right of recovery nor that Payne will suffer injury if the injunction were not granted. Indeed, if anything, it is an admission by Payne that he voluntarily entered into the agreement with Paddon Hughes in anticipation that Gannon would assert the Paddon Hughes' right of first refusal in the prior Canadian litigation.

Furthermore, the record in the prior Canadian litigation shows that Payne pleaded his contract with Paddon Hughes by way of a trial amendment. Thus, undisputedly that contract was before the Canadian court; later, however, the Alberta Supreme Court held that the right of first refusal in the 1964 Gannon Paddon Hughes contract did not apply to Payne. What is clear, however, from the statement of facts on the application for temporary injunction is that Payne and his Canadian attorney considered the 1964 right of first refusal to be an impediment to Payne's prior Canadian suit and voluntarily entered into the agreement with Paddon Hughes without Gannon's knowledge. Under these circumstances, it bends credulity to assert that Payne has established a probable right of recovery because Gannon "fraudulently asserted the right of first refusal clause in his 1964 contract with Paddon Hughes." With respect to this assertion, a Canadian court would be better qualified to determine whether such a cause of action existed under Canadian law. Nevertheless, in our statement of facts Payne does not even suggest that Gannon's Canadian pleadings

with respect to the Paddon Hughes' right of first refusal in the prior litigation were fraudulently pleaded. Thus, Payne failed to show a probable right of recovery and did not even attempt to show any injury. In my view, this evidence shows that a Canadian court would likely hold that Payne had no cause of action and, if not, that the action he now advances in Texas would be barred by res judicata.

Gannon also asserts that granting the injunction was an abuse of discretion because the doctrine of *forum non conveniens* compels that all issues be tried in the Canadian court which rendered the prior judgment. I agree. Under the doctrine of *forum non conveniens*, the trial court abuses its discretion if it enjoins a proceeding concerning the same subject matter in a convenient foreign jurisdiction. *PPG Industries Inc. v. Continental Oil Company*, 492 S.W.2d 297, 300 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.). In deciding whether the suit would be more appropriate if heard in another forum, the trial court must compare itself with the other forum in the following respects: (1) the ability to better serve the litigant's private interest; (2) accessibility to evidence and witnesses; (3) ability to compel unwilling witnesses' attendance and the cost of presenting willing witnesses; (4) the ability to give effective relief; (5) whether it must apply foreign law and, if so, whether the other jurisdiction's law is so dissimilar to Texas law that it would be difficult or impossible to enforce in a Texas court. *Flaiz v. Moore*, 359 S.W.2d 872, 874 (Tex.1962).

Gannon next argues that Payne is not a real party in interest because he assigned his rights in the Hambly lease to Webb Petroleum, Ltd., and that Gannon's interest in the Hambly property is now owed by Denton Energy, Ltd. Both of these Canadian corporations have their corporate headquarters in Canada. If Gannon is correct, it would be difficult for a Texas court to enforce its orders in furtherance of Payne's suit. Additionally, it may be necessary to call officials of Denton Energy

and Webb Petroleum, Hughes, Carstairs, Voelcker or their successors in interest as witnesses. All of the potential witnesses reside in Canada. Furthermore, the contracts and records of the prior litigation are in Canada. Thus, because all witnesses and evidence are located in Canada, the *forum non conveniens* doctrine mandates that this case be tried there. Furthermore, it is questionable whether the Canadian courts would enforce Texas' judgment affecting ownership interests to a mineral lease situated in Canada. In this respect, although we cannot consider the affirmative defense of res judicata in reaching our decision in this appeal, Canadian jurisprudence may dictate that the doctrine of res judicata precludes Payne from prevailing on the merits of his claims, as it would in Texas. Under these facts, I would hold that the trial court abused its discretion in temporarily enjoining Gannon's prosecution of the Canadian action.

The trial court also abused its discretion in issuing the temporary injunction under the doctrine of comity. Comity is a principle of mutual convenience whereby one jurisdiction gives effect to another's laws and judicial decisions. *New Process Steel Corp. v. Steel Corp. of Texas*, 638 S.W.2d 522, 524 (Tex.App.—Houston [1st Dist.] 1982 no writ). This principle operates not because of an obligation but rather a result of our deference to, and respect for, another sovereign nation's judicial processes. *New Process Steel Corp.*, 638 S.W.2d at 524. Accordingly, Texas should defer to Canada's courts to resolve the present controversy.

The injunction should also be dissolved because the order fails to comply with TEX.R.CIV.P. 683, which provides:

*Every* order granting an injunction and every restraining order *shall set forth the reasons for its issuance; shall be specific in terms;* shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employ-ees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise. [emphasis added]

These provisions are mandatory. E.G. *Transport Co. of Texas v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549 (1953). In this respect, the only reasons set forth in the order as a basis for the injunction are that the Canadian suit would likely interfere with the Texas court's jurisdiction, that the $24,000 in costs expended by Payne will be wasted, and that "a multiplicity of suits will result." The order further states that:

... Unless Defendant is so restrained, Plaintiff will suffer irreparable injury in that Plaintiff has no adequate remedy at law, *valuable time will be lost by Plaintiff and Plaintiff's costs of conducting this proceeding will have been lost, Plaintiff will be forced to travel to Canada to try issues that are properly before this Court;* and Defendant's actions will cause the Court to lose jurisdiction of this cause ...

(m) Unless the Court grants the injunction sought by Plaintiff, *there is the risk of inconsistent judgments rendered by a Court in Texas, and by a Court in Canada, with no means of resolving the conflict.* Therefore, Plaintiff is without an adequate remedy at law; and, in light of the expenses already incurred, even if Plaintiff can seek to abate or stay the suit in Canada, such a remedy is inadequate. [emphasis added]

These reasons are, as a matter of law, insufficient to comply with rule 683. *See State v. Cook United, Inc.*, 464 S.W.2d 105, 106 (Tex.1971). Indeed, the trial court recognized that the Canadian court might render a judgment inconsistent with the Texas court with no means of resolving the conflict. In this respect, since the Texas suit concerns interests in a Canadian oil and gas lease owned by Canadian corporations, Denton Energy and Webb Petroleum, it is highly unlikely that a Canadian court would enforce a Texas judgment which

may be inconsistent with the prior Canadian judgment and with Canadian law. In my view, this recognition of the problem mandates that, under the doctrines of *forum non conveniens* and comity, Texas courts should defer to the Canadian court. Certainly, this is not a ground which comports with rule 683 justifying enjoining Gannon from seeking to enforce the prior final Canadian judgment and is not a valid reason for the necessity of the injunction.

Indeed, the conclusory recitals of "no adequate remedy at law" and "irreparable harm" are meaningless without legally sufficient reasons to support them. *Charter Medical Corporation v. Miller*, 554 S.W.2d 220 (Tex.Civ.App.—Dallas 1977, no writ). At best, the order delineates that the costs expended in the Texas suit by Payne would be wasted and that inconsistent judgments may result are, as a matter of law, not grounds to enjoin Gannon from pursuing his Canadian declaratory judgment action. Thus, the injunction is void because these reasons are not legally sufficient to merit the granting of the temporary injunction.

In conclusion, for *any* of the reasons stated, I would dissolve the temporary injunction because the grant of that injunction was a clear abuse of discretion.