**TOTAL MINATOME CORPORATION,**
Appellant,

v.

**SANTA FE MINERALS, INC.,** Appellee.

No. 05–92–01294–CV.

Court of Appeals of Texas,
Dallas.

Feb. 23, 1993.

Rehearing Denied March 31, 1993.

Jeffrey G. Henry and R. Scott Fraley, Scott, Douglass & Luton, L.L.P., Dallas, for appellant.

John K. Popham, Martin B. McNamara, Gibson, Dunn & Crutcher and William H. Boyles, Dallas, for appellee.

Before BAKER, KINKEADE, and MORRIS [1], JJ.

## OPINION

MORRIS, Justice.

Total Minatome Corporation (TMC) appeals the entry of a temporary injunction prohibiting it from pursuing a lawsuit in the State of Montana against Santa Fe Minerals, Inc. (Santa Fe). TMC contends the trial court abused its discretion in granting the temporary injunction because Santa Fe failed (1) to show special circumstances or a clear equity entitling it to an injunction; (2) to prove an irreparable injury would occur for which there would be no adequate remedy at law; (3) to bring all indispensable parties before the trial court; and (4) to establish a probable right to succeed on the merits. TMC also claims the injunction is improper because it asserts Montana has exclusive subject-matter jurisdiction over the dispute and the principles of comity and equity demand that it be tried there rather than in Texas. Concluding there is merit in TMC's first and second points of error, we reverse the trial court's judgment and dissolve the temporary injunction.

## FACTS AND PROCEDURAL HISTORY

In 1975, Hanover Petroleum Corporation conveyed to Santa Fe its working interest

---

1. Justice Joseph B. Morris succeeds Justice Kevin B. Wiggins, a member of the original panel.

Justice Morris has reviewed the briefs and the record in this case.

in certain oil and gas leases. Hanover reserved, however, an overriding royalty interest that was convertible to a working interest at any time after "payout" of the first well drilled. In 1988, TMC succeeded to Hanover's reserved overriding royalty interest. To exercise any conversion right it might have, TMC needed to know when the first well reached payout.[2]

The first well on the Montana property reached payout in February 1980. Santa Fe sent notice to TMC in March 1989 that the well previously had reached payout. It is disputed whether, before March 1989, Santa Fe informed TMC of the well's payout. In June 1989, Santa Fe sold all of its interest in the leases. On August 31, 1989, TMC notified Santa Fe it wanted to convert the overriding royalty interest to a working interest. Moreover, TMC demanded the conversion be retroactive to February 1980, the date of the first payout. TMC wanted to be paid for the value of the working interest accrued from February 1980. Santa Fe rejected this demand.

On September 28, 1989, TMC sold its interest in the leases to Luff Exploration Company. The conveyance was made retroactive and purportedly had an effective date[3] of July 1, 1989, which precedes the date of TMC's notice that it wanted to convert to a working interest. It is disputed whether TMC retained any interest in the leases when it made the conveyance to Luff. TMC claimed it retained a "reversionary working interest in the production."

The parties attempted to settle, but their efforts failed. On January 17, 1992, TMC sent a letter to Santa Fe demanding $214,188.71 for the "retroactive" payment and $256,391.75 in interest. TMC threatened litigation if payment was not received within ten days but did not indicate in which forum it might sue.

On January 31, 1992, Santa Fe filed the instant action in Texas seeking a declaratory judgment. Four days later, TMC filed suit in Montana seeking a judgment for the retroactive payment that it claimed was owing.[4] The trial court granted the presently contested temporary injunction on May 5, 1992.

In its order granting the injunction, the trial court specifically found (1) the Texas suit was filed first; (2) the two suits were based upon the same underlying dispute; (3) TMC was seeking money damages in the Montana court and an interest in real property was not involved there; (4) the pendency of the Montana suit constituted an immediate and irreparable threat to Santa Fe because Santa Fe would be forced to defend itself in Montana and subject itself to multiple court rulings upon the same issues; (5) such injury could not be remedied at law; and (6) Santa Fe demonstrated a probable success on the merits.

## DISCUSSION

 Texas courts clearly are empowered to issue injunctions to prevent parties from going forward with litigation in a sister state. *Moton v. Hull*, 77 Tex. 80, 13 S.W. 849, 850 (1890). If such an injunction is issued, appellate review of the order is limited strictly to determining whether there has been a clear abuse of discretion by the trial court in granting the injunction. *Gannon v. Payne*, 706 S.W.2d 304, 305 (Tex.1986); *American Alliance Ins. Co. v. Frito–Lay, Inc.*, 788 S.W.2d 152, 153 (Tex.App.—Dallas 1990, writ dism'd). The appellate court may not substitute its judgment for that of the trial court. *See Texas Foundries, Inc. v. International Moulders & Foundry Worker's Union*, 151 Tex. 239, 248 S.W.2d 460, 463 (1952).

**2.** An issue on the merits is whether Santa Fe was required to give notice of payout to TMC. Santa Fe contends it was not required to do so because (1) both it and TMC had already sold their interests at the time of TMC's conversion to a working interest and (2) Santa Fe was not required, contractually or otherwise, to give notice.

**3.** The effective date of the sale to Luff is disputed by the parties.

**4.** The Montana suit names only Santa Fe as a defendant. The sole plaintiff is Total Minatome Corporation. The suit asks for a money judgment and an accounting. It does not ask for an adjudication of title.

■ However, a trial court's power to enjoin parties from proceeding in a court of another state is not unrestricted. The principle of comity existing between sovereign governments requires courts to exercise their equitable power of injunction sparingly and only in special circumstances. *Gannon*, 706 S.W.2d at 306. Most significantly, a party seeking to enjoin another party from pursuing an out-of-state lawsuit must show a clear equity demands the Texas court's intervention to prevent manifest wrong and injustice. *Christensen v. Integrity Ins. Co.*, 719 S.W.2d 161, 163 (Tex. 1986); *PPG Indus., Inc. v. Continental Oil Co.*, 492 S.W.2d 297, 300 (Tex.Civ. App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.). The trial court's discretion is measured by this uncompromising standard.

■ A clear equity justifying an injunction that indirectly, but effectively,[5] reaches into another state is revealed only in the circumstances and facts of each case. Equity prescribes no fixed rule. However, equity usually exists when a party pleads and proves a probable irreparable injury for which there is no adequate remedy at law. *Recon Exploration, Inc. v. Hodges*, 798 S.W.2d 848, 851 (Tex.App.—Dallas 1990, no writ). But even then, to show an equitable right to injunctive relief, a party must demonstrate a probable right of recovery on the merits of the case. *See Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978). Otherwise, absent this last showing, granting the injunction would be an unwarranted infringement on the right of others to select a proper forum of their choice. Failure to show either an imminent threat of irreparable injury, the absence of an adequate remedy at law, or a probable right of recovery on the merits necessarily precludes the existence of a clear equity

that otherwise would justify the issuance of an injunction.

In its first and second points of error, TMC asserts Santa Fe failed to show either a clear equity or any irreparable injury for which there was no adequate remedy at law. In seeking the temporary injunction, Santa Fe specifically pleaded that its irreparable injury was "the potential of having *two different courts* interpret the rights, responsibilities, and remedies of the parties...." (Emphasis added.) Because of this potential conflict, Santa Fe contended in the trial court it had no adequate remedy at law.

The trial court found the pendency of the parties' claims in the two suits was based upon the "same underlying dispute." The trial court also specifically found the claim pending in Montana constituted the "threat of immediate and irreparable injury" to Santa Fe since it "would be forced to defend itself in Montana and subject itself to multiple courts ruling [sic] upon the same issues." The trial court further found Santa Fe had no adequate remedy at law for this threat of injury. Santa Fe urges these specific findings support the trial court's injunction. It contends the trial court properly protected it from a multiplicity of suits. We disagree.

■ Equity unquestionably permits an injunction to prevent a multiplicity of suits. *Christensen*, 719 S.W.2d at 163. When equity protects a party from a multiplicity of suits, it does so because the party otherwise has no adequate remedy at law. *Repka v. American Nat'l Ins. Co.*, 143 Tex. 542, 186 S.W.2d 977, 979 (1945). There is a distinction, however, between a multiplicity of suits and a multitude of actions.[6] The number of suits is only one factor to consider in determining whether equity should prevent a multiplicity of suits. In this

---

5. An order enjoining a party from pursuing another suit is not directed to the other court. The order does, however, affect the other court indirectly by restricting the exercise of its jurisdiction. *See Gannon*, 706 S.W.2d at 306.

6. There may be many actions between the same parties, all involving different subject matter and legal questions. Generally, there is no equitable need to enjoin a multitude of actions of

this nature. A multiplicity of suits that equity will enjoin may exist, however, where there are more than two suits having at least one identical party and involving the same subject matter or legal questions. *See also Gulf C. & S.F. Ry. v. Pearlstone Mill & Elevator Co.*, 53 S.W.2d 1001, 1003 (Tex.Comm'n App.1932, holding approved).

case, there is only one concurrent action pending in Montana. A single, concurrent action proceeding parallel with another lawsuit does not constitute as a matter of law a multiplicity of suits depriving a party of an adequate remedy at law. *See Christensen,* 719 S.W.2d at 163. Therefore, in this case the trial court could not issue an injunction based on a multiplicity of suits. When only two actions filed in different states are involved, there must be something more than their mere pendency before the trial court may use its equitable power of injunction.

A party certainly may show another pending lawsuit to be a kind that justifies equity preventing it from proceeding. For example, if the action constitutes vexatious litigation or is brought for the purpose of harassment, equity will act. *Christensen,* 719 S.W.2d at 163. Otherwise, the aggrieved party would have no adequate remedy at law.

Santa Fe contends TMC's Montana action was brought for harassment purposes. It points out the Montana suit was filed only four days after the Texas suit was brought. The time and place a suit is filed are factors to consider in determining whether a suit is brought for harassment, but alone these factors are not controlling. In this case, before Santa Fe filed suit in Texas, TMC informed Santa Fe of its intention to file a lawsuit to resolve the dispute. Although it did not reveal where or when it would bring its action, TMC clearly contemplated its suit before Santa Fe filed its lawsuit, not afterward. Also, if there were no connection between the State of Montana and the subject matter of the parties' dispute, TMC's selection of that forum might be more suspect. There is a connection, however. At the very least, the well in which TMC claims a "reversionary working interest in the production" is in Montana.

Santa Fe's vice president also stated he knew of no reason why the suit was brought in Montana "other than to harass [Santa Fe] and force [it] to defend itself in a state in which it was not present and to which it has no relationship." This state-ment is merely conclusory and is not evidence TMC sought to harass Santa Fe. We note further the trial court did not find TMC filed the Montana action for purposes of harassment. We likewise find no indication in the record before us that TMC filed suit for the purpose either of vexation or harassment.

Although we conclude there is neither a multiplicity of suits involved nor any indication TMC filed the Montana action for purposes of vexation or harassment, we turn to examine whether the unwanted consequences to Santa Fe of TMC's Montana lawsuit otherwise justify equity acting to protect it. Santa Fe contends these consequences will be injurious to it. The probable consequences found in another lawsuit may be of such a nature that a party, although having a remedy at law in the action, may be denied an *adequate* remedy at law. This is the nexus in equity between injury and remedy.

Santa Fe claims, and the trial court found, that it will suffer irreparable injury if it is forced to defend itself in Montana and thereby subject itself to possible conflicting rulings of two courts. The injury described is, in effect, the expense of participating in two lawsuits in different states and the possibility of suffering different rulings even though the parties and the contested issues are generally the same. The trial court found the two actions were based upon the same underlying dispute. Based on the record before us, we conclude the two suits generally address the same subject matter and include the same parties. It is clear, however, the action brought by Santa Fe contains additional claims, including a claim for usury, and an additional party.

 Whether the separate actions include the same issues or entirely different ones is not controlling here. When there are only two parallel actions proceeding in different forums, neither the additional expense of litigation nor the possibility of conflicting rulings justifies the granting of an injunction prohibiting a party from pursuing an action in a court outside Texas. *Gannon,* 706 S.W.2d at 307. As the supreme court suggested in *Gannon,* if addi-

tional expense were sufficient reason to grant an injunction, then an injunction would be proper in every case involving more than one action. *Id.* at 307–08. Similarly, if the mere possibility of conflicting rulings from courts sitting in two different states were a reason to grant an injunction, the principle of comity would become meaningless. *See id.* at 306–07. Even if two judgments were eventually signed, Santa Fe has an adequate remedy at law. *See id.* Furthermore, the prospective existence of two judgments signed by different courts in different states is not by itself a threat of irreparable injury.

Where there are two cases pending in different states involving the same parties and generally the same subject matter, the principles of equity and comity must be balanced. Of course, equity prefers resolution of parties' disputes in one action rather than in a multitude of suits. *Barr v. Thompson,* 350 S.W.2d 36, 42 (Tex.Civ. App.—Dallas 1961, no writ). However, in a situation involving two sovereign states, equity's preference to resolve the parties' dispute in one forum must be based on special circumstances or such a clear equity that the principle of comity justifiably can be subordinated. In this case, neither special circumstances nor a clear equity exists. Santa Fe has shown only it may be inconvenienced and that the two courts may in the end address the same or similar issues. This is not enough. Therefore, we conclude the trial court's injunction was improper.

We sustain TMC's first and second points of error. We hold Santa Fe failed to show a clear equity entitling it to injunctive relief. We also hold Santa Fe failed to prove any irreparable injury for which it had no adequate remedy at law. We need not address the remainder of TMC's points of error. We do not address the merits of the case.

We reverse the trial court's judgment and order the temporary injunction dissolved.