ADMIRAL INSURANCE COMPANY, John David Fenn, Ancon Insurance Company (UK) Ltd., Anglo American Insurance Company Ltd., Argonaut Northwest Insurance Company, Assicurazioni Generali, S.P.A., Les Assurances Du Credit, S.A., Bermuda Fire & Marine Insurance Company Ltd., Britamco Insurance Company, British National Life Insurance Society Ltd., British Reserve Insurance Company Ltd., Brittany Insurance Company, CNA Reinsurance of London Ltd., Commercial Union Assurance of United Kingdom Ltd., Compagnie Belge D'Assurance–Credit, S.A., Compagnie Europeene D'Assurance Industrielles, S.A., The Dominion Insurance Company Ltd., Excess Insurance Company Ltd., Folksam International Insurance Company (UK) Ltd., Hawk Insurance Company, Heddington Insurance (UK) Ltd., Highlands Insurance Company, Imperio Companhia De Seguros, Indemnity Marine Assurance Company Ltd., Italia Assicurazioni, L'Etiole S.A. Beige D'Assurance, Lexington Insurance Company Ltd., London and Edinburgh General Insurance Company Ltd., Ludgate Insurance Company Ltd., Malaysia British Insurance Company, Mercator Re, N.V., Nissan Fire & Marine Insurance Company Ltd., North Atlantic Insurance Company Ltd., The People's Insurance Company of China, Pine Top Insurance Company, Royale Beige Incendie Reassurance S.A. D'Assurance, Simcoe & Erie General Insurance Co., Slater, Walker Insurance Company Ltd., Sovereign Marine & General Insurance Company Ltd., St. Katherine Insurance Company Ltd., Stronghold Insurance Company Ltd., Terra Nova Insurance Company Ltd., The Tokio Fire & Marine Insurance Company (UK) Ltd., Triggs–Hansa Insurance Company Ltd., Turegum Insurance Company, Unionamerica Insurance Company Ltd., Universal Reinsurance Corp., Walbrook Insurance Company Ltd., Winterthur Swiss Insurance Company, Wuerttembergische A.G. Versicherungs–Beteiligungsgesellschaft, Yasuda Fire & Marine Insurance Company (UK) Ltd., Zurich International (UK) Ltd., Stonewall Insurance Company, Allianz Underwriters Insurance Company, First State Insurance Company, Old Republic Insurance Company, Allstate Insurance Company (successor-in-interest to Northbrook Excess and Surplus Insurance Company), Hudson Insurance Company, Columbia Casualty Company, California Union Insurance Company, Insurance Company of North America, American Home Insurance Company, Audubon Indemnity Company, Granite State Insurance Company, Insurance Company of the

State of Pennsylvania, Landmark Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA, New Hampshire Insurance Company, and Lexington Insurance Company, Appellants,

v.

The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Appellee.

No. 2–92–198–CV.

Court of Appeals of Texas, Fort Worth.

Jan. 27, 1993.

Rehearing Overruled March 30, 1993.

Vinson & Elkins L.L.P., and John L. Murchison, Jr., David H. Brown, Karl S. Stern, Karen B. Jewell, Kenneth D. Hughes,

Houston, and Michael J. Henke, Washington, DC (Ropes & Gray and George Marshall Moriarty, Kenneth W. Erickson, and Michael R. Pontrelli, of counsel), for appellants John David Fenn and London Market Companies.

Strasburger & Price, L.L.P., and W. Neil Rambin, Mark M. Donheiser, Dallas, for appellants Northbrook Excess & Surplus Ins. Co., Hudson Ins. Co.

Thompson, Coe, Cousins & Irons, Leo John Jordan, Dallas, for appellant Alliance Underwriters Ins. Co.

Richards, Watson & Gershon, Thomas M. Jimbo, Los Angeles, CA, for appellant First State Ins. Co.

Phillip & Orpett, P.C., and Janet R. Davis, Chicago, IL, for appellant Old Republic Ins. Co.

Thompson & Knight, and Stephen L. Tatum, Fort Worth, German, Gallagher & Murtagh, and Kathleen Carson, Philadelphia, PA, for appellant Stonewall Ins. Co.

Fanning Harper & Martinson, and Don Martinson, Sharis L. Hauder, Dallas, for appellants American Home Ins. Co., Audubon Indem. Co., Granite State Ins. Co., Insurance Co. of the State of Pa., Landmark Ins. Co., Nat. Union Fire Ins. Co. of Pittsburgh, PA, New Hampshire Ins. Co. and Lexington Ins. Co.

Law Offices of William A. Brasher, and William A. Brasher, St. Louis, MO, Fielding, Barrett & Taylor, and David Fielding, Cantey & Hanger, and Ralph H. Duggins, Estil Vance, Jr., and J.K. Leonard, Fort Worth, for appellee.

Before FARRIS, DAY and HOPKINS (Retired, Sitting by Assignment), JJ.

DAY, Justice.

This is an appeal from an antisuit temporary injunction granted in favor of the Atchison, Topeka and Santa Fe Railway Company (Santa Fe).

We affirm.

In 1984 ETSI Pipeline Project and Energy Transportation Systems, Inc. (ETSI) filed suit against Santa Fe and several other common carriers in federal district court in Beaumont, Texas (the ETSI suit).[1] With the exception of Santa Fe, the common carriers settled with ETSI before trial.

Following trial, the jury returned a verdict against Santa Fe, which Santa Fe appealed to the Fifth Circuit. Santa Fe and ETSI eventually settled the case before the Fifth Circuit made its ruling on the matter.

In addition to Santa Fe, the parties to this action are Santa Fe's liability insurance carriers and can be categorized into three groups: the London appellants, the Northbrook appellants, and the AIG appellants.

The London appellants are: John David Fenn, Admiral Insurance Company, Ancon Insurance Company (UK) Ltd., Anglo American Insurance Company Ltd., Argonaut Northwest Insurance Company, Assicurazioni Generali, S.P.A., Les Assurances du Credit, S.A., Bermuda Fire & Marine Insurance Company Ltd., Britamco Insurance Company, British National Life Insurance Society Ltd., British Reserve Insurance Company Ltd., Brittany Insurance Company, CNA `Reinsurance of London Ltd., Commercial Union Assurance of United Kingdom Ltd., Compagnie Belge D'Assurance–Credit, S.A., Compagnie Europeene D'Assurance Industrielles, S.A., The Dominion Insurance Company Ltd., Excess Insurance Company Ltd., Folksam International Insurance Company (UK) Ltd., Hawk Insurance Company, Heddington Insurance (UK) Ltd., Highlands Insurance Company, Imperio Companhia de Seguros, Indemnity Marine Assurance Company Ltd., Italia Assicurazioni, L'Etiole S.A. Beige D'Assurance, Lexington Insurance Company Ltd., London and Edinburgh General Insurance Company Ltd., Ludgate Insurance Company Ltd., Malaysia British Insurance Company, Mercator Re, N.V., Nissan Fire & Marine Insurance Company Ltd., North Atlantic Insurance Company Ltd., The People's Insurance Company of China, Pine Top Insurance Company, Royale Beige Incendie Reassurance S.A. D'Assurance, Simcoe & Erie General Insurance Co., Slater, Walker Insurance Company Ltd., Sovereign Marine & General Insurance Company Ltd., St. Katherine Insurance Company Ltd., Stronghold Insurance Company Ltd., Terra

---

1. That suit is styled *ETSI Pipeline Project, et al. v. Burlington Northern, Inc., et al.*, No. B–84– 979–CA, U.S. District Court, Eastern District of Texas, Beaumont Division.

Nova Insurance Company Ltd., The Tokio Fire & Marine Insurance Company (UK) Ltd., Triggs–Hansa Insurance Company Ltd., Turegum Insurance Company, Union-america Insurance Company Ltd., Universal Reinsurance Corp., Walbrook Insurance Company Ltd., Winterthur Swiss Insurance Company, Wuerttembergische A.G. Versicherungs–Beteiligunsgesellschaft, Yasuda Fire & Marine Insurance Company (UK) Ltd., Zurich International (UK) Ltd.

The Northbrook appellants consist of Allstate Insurance Company (formerly Northbrook Excess & Surplus Insurance Company), Hudson Insurance Company, Allianz Underwriters Insurance Company, Old Republic Insurance Company, First State Insurance Company, Columbia Casualty Company, California Union Insurance Company, Insurance Company of North America, and Stonewall Insurance Company.

Finally, the AIG group of appellants includes American Home Insurance Company, Audubon Indemnity Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, Landmark Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., New Hampshire Insurance Company, and Lexington Insurance Company.

Absent a designation of one of these groups, all references to "appellants" in this opinion refer to the appellants collectively.

On May 27, 1992, Santa Fe filed the instant suit seeking a declaration that appellants are obligated under the insurance policies to indemnify Santa Fe for the amount paid in settlement and attorney's fees in the ETSI suit. Santa Fe also sought breach of contract damages.

On June 16, 1992, the Northbrook appellants filed suit in Illinois state court seeking a declaration that they have no duty to indemnify Santa Fe for any losses stemming from the ETSI suit. After the Illinois suit was filed, Santa Fe sought and received a temporary restraining order from the Texas trial court. After a two-day hearing, the trial court entered an injunction enjoining all the appellants from taking further action in the Illinois suit, except as required to do so by an order of the Illinois court, and from commencing or prosecuting any action in any other federal or state court against Santa Fe pertaining to Santa Fe's claimed losses in the ETSI suit.

Appellants take issue with the trial court's ruling on the following grounds: In their three-part point of error, the London appellants complain the injunction is improper because: (1) the pendency of a single parallel case does not warrant an anti-suit injunction; (2) the service of suit clause in the insurance policies is not a basis for enjoining the Illinois action; and (3) the Illinois action does not threaten the Texas trial court's jurisdiction. The Northbrook appellants reiterate these complaints and raise two additional grounds for error: (4) Santa Fe has failed to establish its likelihood of success on the merits of the underlying action; and (5) Santa Fe has failed to establish it has no adequate remedy at law.[2] In their reply briefs, the London and Northbrook appellants also claim that the Illinois suit poses no threat to Texas public policy. The AIG appellants adopt the points of error, reply points and arguments raised by the London and Northbrook appellants.

The overriding question presented to this court is not whether the Texas trial court possessed the inherent power to issue an antisuit injunction, but whether the court's action was a proper exercise of its discretion. *Gannon v. Payne*, 706 S.W.2d 304, 306 (Tex.1986). We will not disturb the

---

**2.** The London appellants contend that the only reason a suit was not pending in Illinois before Santa Fe filed this action was Santa Fe's calculated decision to delay sending demand of its claim to its insurers so that a case or controversy justifying declaratory relief did not exist until after Santa Fe had initiated this action. Santa Fe and appellants disagree over when Santa Fe first attempted to involve appellants in the ETSI suit, however.

Additionally, claims involving Atlanta Insurance Company and American Centennial Insurance Company, before the Illinois court, were either settled or dismissed prior to entry of the temporary injunction and are thus not a part of this proceeding.

trial court's decision absent a clear abuse of discretion by that court. *Id.* at 305.

■ The general rule is that when a suit is filed in a court of competent jurisdiction, that court is entitled to proceed to judgment and may protect its jurisdiction by enjoining the parties to a suit subsequently filed in another court of this state. *Id.* at 305–06. The same rule applies to suits subsequently filed in courts of sister states. *Id.* at 306.

■ With this rule in mind, we must consider what weight we will ascribe to the principle of comity. *Id.* In Texas, comity has been described as "a principle of mutual convenience whereby one state or jurisdiction will give effect to the laws and judicial decisions of another." *Id.* No state or nation can demand that its laws have effect beyond the limits of its sovereignty. Only comity can compel courts to act in a manner designed to advance the rule of law among and between nations. *Id.* Thus, parallel actions ordinarily should be allowed to proceed simultaneously. *Id.* Only in the most compelling circumstances does a court have discretion to issue an antisuit injunction. *Id.* Nonetheless, courts have issued antisuit injunctions to protect their own jurisdiction, to prevent evasion of important public policies of the forum, to prevent a multiplicity of suits, or to protect a party from vexatious or harassing litigation. *Id.* at 307.[3]

■ "There are no precise guidelines for determining the appropriateness of an antisuit injunction or for deciding whether comity should be invoked. The circumstances of each situation must be carefully examined to determine whether the injunction is required to prevent an irreparable miscarriage of justice." *Id.* (citing *Laker Airways v. Sabena, Belgian World Airlines,* 731 F.2d 909, 927 (D.C.Cir.1984)). The principles of comity, however, require that the courts exercise this equitable power sparingly, and only in very special circumstances. *Christensen v. Integrity Ins. Co.,* 719 S.W.2d 161, 163 (Tex.1986). A party seeking to enjoin an out-of-state lawsuit must show that a clear equity demands the Texas court's intervention. *Id.*

■ In this case, the trial court found very special circumstances warranting an antisuit injunction. In the temporary injunction the trial court noted that the underlying dispute is over one issue, insurance coverage, arising from one incident, the ETSI litigation. Additionally, the court noted that identical disputes are currently pending in two state courts between Santa Fe and the Northbrook appellants, with the possibility that other appellants may file other actions in other forums for an answer to the same question.[4] The trial court found that "[t]he havoc which can be produced by disparate proceedings, particularly to the orderly disposition of this case in some forum somewhere, coupled with the expense, the waste and duplication (or triplication) of judicial trial and appellate resources, and the ease with which this can be avoided argue in favor of such an injunction...."

The appellants contend that neither the pendency of the Illinois action nor the service of suit clause in the insurance contracts issued by appellants to Santa Fe

---

3. The London appellants concede that *Gannon* acknowledges antisuit injunctions have been issued under these circumstances. These appellants assert, however, that *Gannon* does not say an antisuit injunction is proper simply because one of these factors exists. The London appellants cite no authority for this position. Moreover, we find at least the latter two of these factors present in the instant case. In addition, while the Illinois proceeding, alone, may not threaten the Texas court's jurisdiction, numerous suits in various forums would prevent the court from efficiently and effectively disposing of this case.

4. The trial court noted that none of the appellants has revealed an intention to file suit in its domiciliary state, or in Beaumont where the ETSI suit went to trial, or in some other state where Santa Fe may have committed its monopolistic acts; "but, there is nothing to prevent this save common sense (an uncommon commodity)." Moreover, the trial court found evidence of a third suit by American Centennial Insurance Company, which appeared to have been settled at the time the temporary injunction was issued. Had the settlement not occurred, litigation over coverage of the ETSI litigation costs would be going forward in three different courts.

warrants the antisuit injunction granted in this case. Additionally, the appellants argue that the Illinois action presents no threat to the Texas court's jurisdiction. Thus, the appellants attack the injunction as "nothing more than a rejection of the [Texas] Supreme Court's holdings in *Christensen* and *Gannon*." The *Gannon* and *Christensen* decisions are the linchpin of appellants' assault upon the trial court's ruling in this case. We find both *Gannon* and *Christensen* clearly distinguishable from the instant case.

■ The facts and circumstances presented in *Gannon* differ from those in this case in at least three important aspects. First, a foreign nation (Canada) and a state (Texas) were the forums of the parallel proceedings. When the sovereigns involved are not sister states but a state and a foreign nation, the policy of allowing parallel court proceedings to continue simultaneously requires more scrupulous adherence. 706 S.W.2d at 306.

Second, judgment was rendered in the suit filed in Canada over two years before the Texas suit was filed. Gannon merely brought a declaratory judgment action in the Canadian court seeking a ruling on whether some of the issues raised in the Texas suit had already been decided in Canada. *Id.* at 305. In this case appellants are asserting the right to sue in the forum of their choice concerning issues that no court has previously ruled upon. Moreover, the parallel suits in *Gannon* involved *similar* issues. *Id.* at 308. In the instant case, the Illinois and Texas suits concern *identical* issues. Thus, the Illinois suit is not a parallel proceeding as that term is used in *Gannon. See* 706 S.W.2d at 306.

Third, the *Gannon* decision was based upon parallel proceedings between only two litigants, Gannon and Payne. *Id.* at 305. This case involves over sixty litigants, some of whom may seek to litigate coverage of the ETSI litigation costs in forums other than Texas or Illinois state courts if the temporary injunction is dissolved.

*Christensen* is likewise clearly distinguishable on its facts. In that case, lawsuits concerning the same general subject matter had been filed in both Texas and California state courts. 719 S.W.2d at 162–63. (The California suit was filed six days after the Texas suit.) *Id.* Importantly, however, the California lawsuit raised issues and involved parties that differed from those in the Texas litigation. *Id.* at 163. Accordingly, the Texas Supreme Court ruled that the California suit was merely a parallel proceeding to the Texas suit and did not constitute a multiplicity of suits. *Id.*

As we have previously noted in this opinion, identical "mirror image" issues are before both the Texas and Illinois courts in the case at bar. We therefore find the Illinois suit is not a mere parallel proceeding but constitutes a multiplicity of suits. Moreover, in *Christensen,* all of the potential parties to the actions were either represented in the Texas or the California lawsuits. In this case, however, only the Northbrook appellants are before the Illinois state court. If the injunction is dissolved, the other appellants may not confine themselves to the Texas or Illinois actions. Rather, they may select other forums in which to litigate, a right which all the appellants assert is available to them.

In *Christensen* our supreme court stated that an antisuit injunction may be granted to prevent a multiplicity of suits or to protect a party from vexatious or harassing litigation. 719 S.W.2d at 163. Appellants' urgings to the contrary, we believe the case before us presents both of these possibilities, as is evidenced by the dispute over the single insurance coverage issue, the number of litigants, and the number of potential forums available absent an antisuit injunction. *See also Jacobsen v. Jacobsen,* 695 S.W.2d 44, 48 (Tex.App.—Corpus Christi 1985, no writ) (injunction is appropriate if adjudication of the same issue in separate actions would result in unnecessary delay, substantial inconvenience and expense to the parties and witnesses).

We are further persuaded of the propriety of the trial court's ruling by the Hous-

ton Court of Appeals' decision in *PPG Industries, Inc. v. Continental Oil Co.*, 492 S.W.2d 297 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.). PPG appealed from a Houston trial court's order enjoining PPG from continuing to prosecute a Louisiana suit that postdated a Texas suit on substantially the same issues. The trial court gave the following reasons for granting the injunction: (1) the Texas suit was filed first; (2) the Texas controversy was identical to that in Louisiana; and (3) prosecution of the Louisiana suit would interfere with the Texas court's jurisdiction. *Id.* at 299.

Recognizing that the trial court should exercise its injunction power sparingly and only when "a clear equity is presented requiring the interposition of the court to prevent manifest wrong and injustice," the Houston Court of Appeals affirmed the trial court's decision. *Id.* at 300. We realize *PPG* predates both *Gannon* and *Christensen*, but we do not find it to be in conflict with either of those decisions when the facts of all three of the cases are considered.

■ Finally, we note the Northbrook appellants' argument that the trial court based its decision upon "nothing more than a recognition that this is a 'big' case, ignoring Justice Holmes' admonition that '[g]reat cases, like hard cases, make bad law'" (citing *Northern Securities Co. v. United States*, 193 U.S. 197, 400, 24 S.Ct. 436, 468, 48 L.Ed. 679 (1904) (Holmes, J. dissenting)). We believe the number of parties to the action underlying this appeal is a legitimate basis for granting the injunction. The Texas trial court faced the very real possibility that suits involving mirror image claims between Santa Fe and its insurers could spring up in an undetermined number of forums if no antisuit injunction was issued. None of the cases relied upon by appellants addresses such a problem. Surely the size of a case as large as this one is a special circumstance that warrants consideration.

While there are no precise guidelines for determining the appropriateness of an antisuit injunction or for deciding when comity

should be invoked, we find the totality of the circumstances shown in the record compelled the issuance of an injunction in this case to prevent an irreparable miscarriage of justice and otherwise inevitable havoc within the judicial system. *Gannon*, 706 S.W.2d at 306. Because we find that the trial court's action was proper in order to prevent a multiplicity of suits and to protect Santa Fe from vexatious or harassing litigation, we overrule the first part of the London appellants' point of error and the Northbrook appellants' second point of error. Based upon our holding with regard to these points of error, we deem it unnecessary to consider the remainder of the London appellants' point of error or their reply points. We also deem it unnecessary to consider the Northbrook appellants' third point of error or their reply points. We now turn to the Northbrook appellants' fourth point of error, by which they challenge the propriety of the injunction based on Santa Fe's alleged failure to demonstrate a likelihood of success on the merits.

■ The Northbrook appellants contend that Santa Fe was required to make an evidentiary showing of likelihood of success on the merits of its claim that coverage exists for the ETSI antitrust loss. Santa Fe argues that this rule does not apply because it sought an antisuit injunction. Santa Fe urges, and the London appellants agree, that the merits of an insured's claim have no bearing on the question of whether an antisuit injunction should be issued. Northbrook cites *Manufacturers Hanover Trust Co. v. Kingston Investors Corp.*, 819 S.W.2d 607 (Tex. App.—Houston [1st Dist.] 1991, no writ) (*MHT*) as support for its position.

In *MHT* the same parties and issues were the subject of lawsuits in Texas and New York state courts. *Id.* at 609. The Houston Court of Appeals found that the Texas trial court abused its discretion in enjoining MHT from further participation in the New York suit, in part because Kingston had failed to show a probable right to recovery on the merits. *Id.* at 610. The Northbrook appellants urge us to adopt the Houston court's reasoning. We decline to follow

258

*MHT,* however, because we agree with Santa Fe and the London appellants that the merits of an underlying cause of action have no bearing on the propriety of an antisuit injunction. Moreover, we believe our position is in line with Texas case law on this issue.

*Gannon* and *Christensen* make no mention of probable success on the merits as a prerequisite for an antisuit injunction. Similarly, other cases that have affirmed the grant of antisuit injunctions make no mention of such a requirement. *See PPG,* 492 S.W.2d at 297; *Espada Garrido v. Iglesias de Espada,* 785 S.W.2d 888, 889–90 (Tex.App.—El Paso 1990, no writ); *Jacobsen,* 695 S.W.2d at 44. *See also State v. Cook United, Inc.,* 469 S.W.2d 709, 712–13 (Tex.1971) (antisuit injunction was granted to prevent multiplicity of suits and to avoid vexatious litigation and harassment; was not granted on the merits of the pending case).

Additionally, we agree with Santa Fe that common sense, alone, dictates that the *merits* of an insurance coverage suit have no relevance on *where* the suit should be tried. We overrule the Northbrook appellants' fourth point of error.

In their fifth point of error, the Northbrook appellants complain the trial court improperly issued the injunction because Santa Fe failed to demonstrate it had no adequate remedy at law. *See MHT,* 819 S.W.2d at 611. Based on the special circumstances of this case, we find otherwise.

As we have previously noted in this opinion, the number of litigants make the likelihood of multiple proceedings in numerous jurisdictions a very real possibility. Absent a temporary injunction, Santa Fe has no adequate remedy at law by which to avoid defending identical lawsuits concerning a single issue, insurance coverage, in an as-of-yet undetermined number of forums. Accordingly, we overrule the Northbrook appellants' first and fifth points of error.

We find the trial court did not abuse its discretion in granting Santa Fe's applica-

tion for an antisuit injunction in this case. The trial court's judgment is affirmed.