**GOLDEN RULE INSURANCE COMPANY, Appellant,**

v.

**Todd HARPER, Appellee.**

No. 14–95–00626–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 31, 1995.

Ann Ryan Robertson, Teresa Letson, Houston, Judy L. Burnthorn, Michael Boleware, New Orleans, LA, for appellant.

John W. Tavormina, John L. Russell, Houston, for appellee.

Before LEE, AMIDEI and EDELMAN, JJ.

## MAJORITY OPINION

LEE, Justice.

Appellant, Golden Rule Insurance Company (Golden Rule), appeals a temporary injunction granted in favor of Todd Harper on May 18, 1995. In seven points of error Golden Rule complains that the trial court should not have granted the temporary injunction. We affirm.

Todd and Mary Harper obtained health insurance from Golden Rule in 1991. At the time, and ever since, the Harpers were residents of Illinois. In November 1992, Mary was diagnosed by her Indiana physician as having advanced metastatic melanoma. Her physician referred her to M.D. Anderson Cancer Center in Houston, Texas. She was treated by Dr. Plager at M.D. Anderson until her death in December 1993, incurring approximately $300,000 in medical expenses. Golden Rule denied approximately $160,000 of her medical expenses as investigational, experimental or for research purposes.

Harper filed suit in Harris County in November 1994, attempting to recover the denied benefits. Initially, Golden Rule filed a motion to transfer venue from Harris County to Dallas County. After Harper opposed the motion, Golden Rule withdrew its motion to transfer venue. In March 1995, Golden Rule filed a declaratory judgment action in Illinois. In the declaratory judgment action, Golden Rule requested that the court:

1. adjudicate the rights and liabilities of the parties under the insurance contract; and

2. declare that the insurance contract does not apply to or cover the medical expenses which were excluded as investigational, experimental or for research purposes.

In response, Harper amended his original petition and requested an anti-suit injunction against Golden Rule.[1] After a hearing, the trial court granted Harper's request for an anti-suit injunction. In its temporary injunction order, the trial court found that:

1. Harper would probably prevail in a trial of this cause;

2. The declaratory judgment action filed by Golden Rule in Illinois was vexatious and brought for the purpose of harassment;

---

1. Harper's original petition alleged the denied benefits to be approximately $80,000. After the declaratory judgment action was filed in Illinois,

Harper amended his petition alleging that Golden Rule had denied approximately $160,000 in benefits.

3. The declaratory judgment action consists of the defensive issues presented in Harper's original action and, therefore, is duplicative of the original action;

4. Golden Rule intends to pursue its declaratory judgment action in Illinois and proceed to judgment as soon as possible, before the trial court could render judgment in Harper's original action;

5. If Golden Rule carried out its intention, it would alter the status quo and tend to make a judgment in favor of Harper ineffective;

6. Harper would be deprived of his choice of forum, and inequitably be subjected to *res judicata;* and

7. Without a temporary injunction, Harper would be without any adequate remedy at law because Harper would not be able to compel unwilling witnesses to testify in Illinois, he would be unfairly burdened in getting willing witnesses to attend a trial in Illinois, and he would be required to incur additional expenses for which there is no good faith reason to incur.

Golden Rule appeals the trial court's order granting the temporary injunction in seven points of error. *See* TEX.CIV.PRAC. & REM. CODE ANN. § 51.014 (Vernon Supp.1995) (allowing an appeal of an interlocutory order that grants a temporary injunction).

■ There is no question that Texas courts may issue anti-suit injunctions to prevent parties from going forward with litigation in a sister state. *Christensen v. Integrity Ins. Co.,* 719 S.W.2d 161, 163 (Tex.1986); *Gannon v. Payne,* 706 S.W.2d 304, 305–06 (Tex.1986); *Admiral Ins. v. Atchison, Topeka and Santa Fe Ry.,* 848 S.W.2d 251, 255 (Tex.App.—Fort Worth 1993, no writ). When a suit is filed in a court of competent jurisdiction, that court is generally entitled to proceed to judgment and may protect its jurisdiction by enjoining the parties to a subsequently filed suit in another state. *Admiral Ins.,* 848 S.W.2d at 255 (citing *Gannon,* 706 S.W.2d at 306). "The principle of comity, however, requires that courts exercise this equitable power sparingly and only in special

circumstances." *Christensen,* 719 S.W.2d at 163. Comity has been described as "a principle of mutual convenience whereby one state or jurisdiction will give effect to the laws and judicial decisions of another." *Admiral Ins.,* 848 S.W.2d at 255 (citing *Gannon,* 706 S.W.2d at 306).

■ Therefore, when suits are pending in two sister states, the trial court is required to balance comity with its inherent power to protect its jurisdiction when determining whether to issue an anti-suit injunction. In determining whether an anti-suit injunction should be issued, the supreme court has indicated:

> There are no precise guidelines for determining the appropriateness of an anti-suit injunction or for deciding whether comity should be invoked. The circumstances of each situation must be carefully examined to determine whether the injunction is required to prevent an irreparable miscarriage of justice.

*Gannon,* 706 S.W.2d at 306–07.

■ In reviewing a trial court's grant of an anti-suit temporary injunction, we are to determine whether the trial court abused its discretion. *Christensen,* 719 S.W.2d at 163; *Gannon,* 706 S.W.2d at 305. We will not disturb the trial court's decision absent a clear abuse of discretion by the trial court. *Admiral Ins.,* 848 S.W.2d at 254–55. We may not substitute our judgment for that of the trial court. *Total Minatome Corp. v. Santa Fe Minerals, Inc.,* 851 S.W.2d 336, 338 (Tex.App.—Dallas 1993, no writ). Rather, we are limited to determining whether the trial court abused its discretion by: 1) acting arbitrarily and unreasonably, without reference to guiding rules or principles, or 2) misapplying the law to the established facts of the case. *Ramsey v. Lewis,* 874 S.W.2d 320, 322 (Tex.App.—El Paso 1994, no writ); *Long John Silver's Inc. v. Martinez,* 850 S.W.2d 773, 775 (Tex.App.—San Antonio 1993, writ dism'd w.o.j.); *Manufacturers Hanover Trust Co. v. Kingston Investors Corp.,* 819 S.W.2d 607, 610 (Tex.App.—Houston [1st Dist.] 1991, no writ). We are to review the totality of the circumstances when determining whether the trial court abused

its discretion. *Christensen*, 719 S.W.2d at 163.

We have reviewed the record and have determined that based on a totality of the circumstances the trial court did not abuse its discretion. We cannot say that the trial court acted arbitrarily or unreasonably, without reference to guilding rules or principals. Nor can we say that the trial court misapplied law to the facts established at the hearing.

In its first three points of error, Golden Rule argues Harper failed to demonstrate the requirements of an anti-suit injunction. Golden Rule contends that the trial court erred in finding its jurisdiction was threatened and in finding the Illinois suit was vexatious and brought to harass.

In order to prevail, a party requesting an anti-suit injunction "must show that a clear equity demands the Texas court's intervention." *Christensen*, 719 S.W.2d at 163. Equity generally "exists when a party pleads and proves a probable irreparable injury for which there is no adequate remedy at law. But even then, to show an equitable right to injunctive relief, a party must demonstrate a probable right of recovery on the merits of the case." *Total Minatome*, 851 S.W.2d at 339 (citations omitted). An anti-suit injunction may be justified when the injunction protects a party from vexatious or harassing litigation. *See Christensen*, 719 S.W.2d at 163.[2]

In support of its argument that the declaratory judgment action in Illinois was not vexatious and harassing, Golden Rule cites *Total Minatome Corp. v. Santa Fe Minerals, Inc.*, 851 S.W.2d 336 (Tex.App.—Dallas 1993, no writ). In that case, Santa Fe filed a declaratory judgment action in Texas. Four days later, Total Minatome Corporation (TMC) filed a suit in Montana. The Texas trial court granted Santa Fe an anti-suit temporary injunction which the Dallas Court of Appeals dissolved. *Id.* at 341. Santa Fe argued that TMC's Montana suit was brought for harassment because it was filed four days after the Texas declaratory judgment action. The court rejected Santa Fe's argument and noted that TMC had previously informed Santa Fe of its intention to file a lawsuit. *Id.* at 340. The court also noted that the trial court did not find that TMC filed the Montana action for harassment and there was no evidence which indicated that it was brought to harass. *Id.* Accordingly, based on a review of the record, the court of appeals determined that the suit was not brought for harassment.

To the contrary, there is no indication in the record before us that Golden Rule informed Harper that it was going to file an action. Rather, the record indicates that Golden Rule denied benefits based on an exclusion in its policy and did not begin to act until after Harper filed suit. Also, the trial court in the current case found that the suit was "brought for the purpose of harassment." Thus, the current case is not controlled by *Total Minatome*.

Because it is always difficult to demonstrate that a party brought a suit to harass, we are forced to review the evidence, direct and circumstantial, which the trial court relied on to determine Golden Rule's motivation for bringing the suit. The time and place where a suit is filed are factors to be considered in determining whether a suit was brought to harass. *See Id.* (rejecting Santa Fe's argument that the Montana suit was brought to harass because it was brought four days after the Texas suit). Golden Rule brought the declaratory judgment action in Illinois four months after Harper brought this action in Texas. Harper, chose to bring his action in Harris County where all of Mary Harper's excluded treatments were administered. All the physicians who could explain the procedures performed on Mary Harper resided in the county where Harper brought his action. It would be significantly more difficult for Harper to defend the declaratory judgment action in Illinois. Golden Rule knew Harper was an individual

---

**2.** Anti-suit injunctions also have been issued by courts (1) to protect their jurisdiction, (2) *to* prevent evasion of important public policies of a foreign nation, and (3) to prevent a multiplicity of suits. *See Owens–Illinois, Inc. v. Webb*, 809 S.W.2d 899, 902 (Tex.App.—Texarkana 1991, no writ), *cert. denied*, 503 U.S. 919, 112 S.Ct. 1293, 117 L.Ed.2d 516 (1992).

with limited resources and that it would be difficult for him to litigate in Illinois.

Furthermore, the suit brought in Illinois was the second attempt by Golden Rule to circumvent the action being tried in Harris County. Initially, Golden Rule attempted to transfer venue from Harris County because "the cause of action alleged in [Harper's] petition [did not] occur in Harris County, Texas." Golden Rule argued that venue was proper in Dallas because it was a foreign corporation which "maintains a representative or agency in Dallas County." Harper opposed the transfer and responded that Harris County was the county in which the loss occurred. *See* TEX.CIV.PRAC. & REM. CODE ANN. § 15.032 (Vernon 1986); *American Sec. Life Ins. Co. v. M.D. Anderson Hosp. and Tumor Inst.*, 408 S.W.2d 155 (Tex. Civ.App.—Houston 1966, writ dism'd). Golden Rule then withdrew its motion.

The trial court also noted in its temporary injunction order that the declaratory judgment action only consisted of the defensive issues that Golden Rule would present in Harper's suit in Texas. The declaratory judgment action did not add anything additional to the scope of the controversy. The only issue to be determined in each proceeding is whether Golden Rule properly excluded the medical treatments. The suits pending in Texas and Illinois are "mirror images" of each other. That is, the same issue is presented in each action. When "mirror image" issues are present, "the havoc which can be produced by disparate proceedings, . . . the waste and duplication (or triplication) of judicial trial and appellate resources, and the ease with which this can be avoided," weigh in favor of an anti-suit injunction. *Admiral Ins.*, 848 S.W.2d at 255 ("the underlying dispute is over one issue, insurance coverage, arising from one incident"); *cf. Christensen,* 719 S.W.2d at 163 ("[w]hile both proceedings here undoubtedly concern the same general subject matter, Christensen's California lawsuit raises issues and involves parties that differ from those in the Texas litigation"); *Gannon,* 706 S.W.2d at 308 ("the issues of the prior Canadian suit and the Texas action are *similar* "); *see also PPG Indus., Inc. v. Continental Oil Co.*, 492 S.W.2d 297 (Tex. Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.) (affirming a trial court's grant of a temporary injunction restraining PPG from continuing to prosecute a Louisiana suit that was filed subsequent to and was identical to the Texas action) (cited with approval in *Admiral Ins.*, 848 S.W.2d at 257).

Finally, we believe that the trial court did not abuse its discretion in issuing the anti-suit injunction because allowing Golden Rule to proceed would deprive Harper of his choice of forum. It is a fundamental principal of Texas jurisprudence that a plaintiff should be allowed to choose his or her forum. Generally, when Texas appellate courts have struck down an anti-suit injunction, a declaratory judgment action was filed in Texas before another suit was filed in a sister state. *See, e.g., Christensen,* 719 S.W.2d at 162 (declaratory action filed in Texas prior to suit in California); *Total Minatome,* 851 S.W.2d at 338 (declaratory action filed in Texas prior to suit in Montana); *see also Gannon,* 706 S.W.2d at 305 (Payne sued and received judgment in Canadian suit; later, Payne brought a similar suit in Texas and then Gannon brought a declaratory judgment action in Canada; the supreme court dissolved the Texas trial court's anti-suit injunction in part because the prior litigation occurred in Canada); *Manufacturers Hanover,* 819 S.W.2d at 609 (dissolving temporary injunction where Texas action asserting defensive claims of fraudulent inducement was filed prior to bank's debt collection action in New York). The current case is factually the opposite situation. Harper brought this action in Texas and Golden Rule brought the subsequent declaratory judgment action in Illinois. Allowing Golden Rule to proceed with its declaratory judgment action would erode Harper's right to choose his forum.

In summary, we find that the trial court did not abuse its discretion in granting Harper an anti-suit injunction against Golden Rule, based on the totality of the circumstances reflected in the record. Accordingly, we overrule Golden Rule's first three points of error.

■ In its last four points of error, Golden Rule contends that Harper failed to prove the "basic requirements" for issuance of an

injunction. Specifically, Golden Rule argues that Harper has not shown probability of success on the merits, probable injury if the injunction is not granted, and that he has no other adequate remedy at law. In essence, Golden Rule contends that Harper had to show the "basic requirements" for issuance of an injunction **and** that a clear equity existed for the issuance of an anti-suit injunction. Because we believe the "basic requirements" are necessarily incorporated in "a clear equity" or "special circumstances," we disagree.

*Gannon* and *Christensen* do not mention that an applicant must show both a clear equity and the "basic requirements" for issuance of an injunction. Rather, the supreme court stated that the power to enjoin proceedings "should be exercised sparingly and only by reason of very *special circumstances,*" *Gannon,* 706 S.W.2d at 306 (emphasis added), and that a party seeking an anti-suit injunction "must show that a *clear equity* demands the Texas court's intervention." *Christensen,* 719 S.W.2d at 162 (emphasis added). *See also Admiral Ins.,* 848 S.W.2d at 258 (rejecting that an applicant has to show probability of success on the merits as a prerequisite to an anti-suit injunction because the supreme court has not ever required such a showing and because common sense "dictates that the *merits* of an insurance coverage suit have no relevance on *where* the suit should be tried") (emphasis in original).

In addition, the case relied on by Golden Rule does not support its contention. Golden Rule relies on *Manufacturers Hanover* for the proposition that Harper was required to show "a probable right to recovery, irreparable injury, if the injunction is not granted, and that no adequate remedy at law exists." *See Manufacturers Hanover,* 819 S.W.2d at 610. That case dealt with an appeal of a temporary injunction which enjoined the bank from pursuing a debt collection action filed in New York. The First Court of Appeals addressed three points of error, the first two of which relate to our case. The first point of error asked the court to determine if the prerequisites of a temporary injunction had been established. In the second point of error, the bank argued that Kingston

Investors had not satisfied the requirements for issuance of an anti-suit injunction. The court of appeals addressed the banks' points of error in order and determined that Kingston Investors had not proven the prerequisites for injunctive relief. *See id.* at 610–11. The court then addressed whether an anti-suit injunction was justified. The court noted that Texas courts have the power to issue anti-suit injunctions, but that "the circumstances of each situation must be carefully examined to determine whether an injunction is required to prevent an irreparable miscarriage of justice." *Id.* at 612. The court then held that the factual situation presented did not "reveal any of those unique issues which would justify sacrificing comity." *Id.* In its conclusion, the court sustained the banks first two points of error because it believed Kingston Investors "failed to establish the prerequisites for injunctive relief, **nor** did they show any special circumstances or clear equity necessary to enter an anti-suit injunction." *Id.* (emphasis added). The First Court's decision indicates that if Kingston Investors had presented "special circumstances" or "a clear equity," the anti-suit injunction would have been properly issued regardless of whether Kingston Investors demonstrated the "basic requirements" of a temporary injunction. We have previously determined that Harper sufficiently demonstrated "a clear equity" because the Illinois litigation was vexatious and brought to harass. Accordingly, Harper was not required to demonstrate that the "basic requirements" of a temporary injunction had been met. *But see Total Minatome,* 851 S.W.2d at 339–40 (indicating that "equity **usually exists** when a party pleads and proves a probable irreparable injury for which there no adequate remedy at law, ... [and] a probable right of recovery on the merits of the case;" stating that failure to show irreparable injury, absence of an adequate remedy at law and probable right of recovery precluded the existence of a clear equity; and then reviewing the facts of the case to determine whether the proceedings constituted a multiplicity of suits or whether the suit was brought to harass).

■ However, even if Harper was required to demonstrate the "basic require-

ments" for issuance of an injunction, Golden Rule's argument fails. We have reviewed the record and have determined that Harper adequately demonstrated probable right to recover and probable injury in the interim without an adequate legal remedy. *See Total Minatome,* 851 S.W.2d at 339.

Dr. Plager testified at length on behalf of Harper at the temporary injunction hearing why certain procedures were performed and why those procedures were not investigational, experimental or for research purposes. Golden Rule did not present any controverting expert testimony other than the reports of a doctor in Oklahoma who made the initial recommendation that the procedures should be excluded. Those records were only admitted as medical records, not expert testimony. Accordingly, based on the evidence presented, we cannot say that the trial court abused its discretion in determining that Harper had a probable right of recovery.

In addition, Harper adequately demonstrated that he would be subjected to "a probable irreparable injury for which there is no adequate remedy at law." *Id.* at 339. In order for a legal remedy to be adequate, "it must give the applicant complete, final, and equitable relief." *Manufacturers Hanover* at 610. If the temporary injunction was not issued, Harper would be required to incur the additional expense of defending the declaratory judgment action in Illinois. Additional expense by itself is insufficient to support an anti-suit injunction. *Gannon,* 706 S.W.2d at 307–08. However, this case contains "special circumstances" which warrant an anti-suit injunction. If the anti-suit injunction was not issued, Harper would have difficulty getting witnesses to attend because most live in Texas, not Illinois, he would have his choice of forum circumvented and he would be forced to submit to litigation the trial court determined was vexatious and harassing. If a party shows that the other pending lawsuit is vexatious and brought to harass and is not granted an injunction, "the aggrieved party would have no adequate remedy at law." *Total Minatome,* 851 S.W.2d at 340. Accordingly, we cannot say that the trial court abused its discretion in determining that Harper probably would be

injured without an adequate remedy at law. Golden Rule's fourth, fifth, sixth and seventh points of error are overruled.

We find the trial court did not abuse its discretion in granting a temporary injunction in favor of Harper which enjoined Golden Rule from proceeding with a declaratory judgment action filed in Illinois. The judgment of the trial court is affirmed.

EDELMAN, Justice, dissenting.

The Texas Supreme Court has made it clear that granting anti-suit injunctions is to be the exception, rather than the rule:

> No question exists that Texas courts are empowered to issue injunctions to prevent parties from going forward with litigation in a sister state. The principle of comity, however, requires that courts *exercise this equitable power sparingly, and only in very special circumstances.* A party seeking to enjoin an out-of-state lawsuit must show that *a clear equity demands the Texas court's intervention.*
>
> \*   \*   \*   \*   \*   \*
>
> An anti-suit injunction may be justified when the injunction will prevent a multiplicity of suits or will protect a party from vexatious or harassing litigation. *A single parallel proceeding in a foreign forum, however, does not constitute a multiplicity nor does it, in itself create a clear equity justifying an anti-suit injunction.*
>
> \*   \*   \*   \*   \*   \*
>
> Nothing in this record persuades us that both of these lawsuits cannot be allowed to proceed simultaneously, *as they ordinarily should.*

*Christensen v. Integrity Ins. Co.,* 719 S.W.2d 161, 163 (Tex.1986) (citations omitted) (emphasis added). Similarly, anti-suit injunctions are not justified by the possibility of inconsistent judgments or the additional expense of litigation; otherwise, such "an injunction would be proper in every case." *Gannon v. Payne,* 706 S.W.2d 304, 307–08 (Tex.1986). Instead, "[t]he circumstances of each situation must be carefully examined to determine whether the injunction is *required to prevent an irreparable miscarriage of justice.*" *Id.* at 307 (emphasis added).

In this case, the majority opinion concludes that the trial court's issuance of an anti-suit injunction was not an abuse of discretion because: Golden Rule denied benefits and did not begin to act until Harper filed suit; Golden Rule filed the Illinois action four months after Harper filed the Texas case; the record does not reflect that Golden Rule notified Harper that it was going to do so;[1] most of the events in question took place, and most of the essential witnesses are located, in Texas, making it more difficult for Harper to defend the declaratory judgment action in Illinois; Golden Rule knew that Harper was an individual and that it would be more difficult for him to litigate in Illinois; Golden Rule had previously tried to transfer venue out of Harris County; the issues in the two actions were the same; and allowing Golden Rule to proceed in Illinois would deprive Harper of his choice of forum.[2]

In substance, however, these factors amount to nothing more than the added inconvenience and expense which are common to, and largely inevitable in, situations involving a single parallel lawsuit. To the extent they are deemed adequate to justify an anti-suit injunction, then such injunctions will be available in most, if not all, instances of a single parallel lawsuit, and the policy of limiting their application to only "very special circumstances," where a "clear equity demands the Texas court's intervention,"[3] or where "required to prevent an irreparable miscarriage of justice,"[4] will be defeated. Because I believe that those standards were not satisfied in this case, I would reverse the order of the trial court, and order the temporary injunction dissolved.

1. Nor did Harper request an abatement from the Illinois court before seeking an anti-suit injunction from the Texas court.

2. These factors presumably also support the trial court's conclusion that Golden Rule's lawsuit was "brought for the purpose of harassment." However, not only were the Harpers residents of Illinois, but the choice-of-law provision of their insurance agreement specified, in effect, that the transaction was governed by the laws of that State. Thus, whatever its *true* purpose in filing the Illinois action might have been, which cannot be reliably inferred from this record, Golden Rule had a legitimate interest in having the courts of Illinois decide and review the application of its laws to its residents.

